*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0443P (6th Cir.)
File Name: 03a0443p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
   *Plaintiff-Appellee,*

v.

CLIFTON GLEN HAMMOND,
   *Defendant-Appellant.*

No. 01-5358

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 99-00194—Jennifer B. Coffman, District Judge.

Argued: December 4, 2002

Decided and Filed: December 15, 2003

Before: BOGGS, Chief Judge; and GUY and NELSON,
Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Warren N. Scoville, WARREN N. SCOVILLE
& ASSOCIATES, London, Kentucky, for Appellant. Charles
P. Wisdom, Jr., ASSISTANT UNITED STATES
ATTORNEY, Lexington, Kentucky, for Appellee.
**ON BRIEF:** Warren N. Scoville, WARREN N. SCOVILLE
& ASSOCIATES, London, Kentucky, for Appellant. Charles

---

P. Wisdom, Jr., ASSISTANT UNITED STATES
ATTORNEY, Lexington, Kentucky, for Appellee.

_____

**OPINION**

_____

BOGGS, Chief Judge. Clifton Glen Hammond was named
in a seven-count superseding indictment issued in September
1999 on the basis of evidence seized from his property
pursuant to two search warrants. Hammond was charged in
Counts One through Seven respectively with manufacturing
more than fifty marijuana plants, in violation of 21 U.S.C.
§ 841(a)(1), possessing numerous firearms "during and in
relation to a drug trafficking crime," in violation of 18 U.S.C.
§ 924(c)(1), possessing with the intent to distribute
methamphetamine, in violation of 21 U.S.C. § 841(a)(1),
possessing a machine gun "during and in relation to a drug
trafficking crime," in violation of 18 U.S.C. § 924(c)(1),
possessing a machine gun, in violation of 18 U.S.C. § 922(o),
possessing a "sawed-off shotgun," in violation of 26 U.S.C.
§ 5861(d), and possessing an unregistered destructive device,
in violation of 26 U.S.C. § 5861(d).

Following his indictment, Hammond entered a plea of not
guilty and subsequently filed a motion to suppress evidence
and a motion to dismiss the charges against him that alleged
he possessed firearms "during and in relation to" his crime of
drug trafficking, pursuant to 18 U.S.C. § 924(c)(1). After a
hearing on the motion to suppress, Hammond further moved
the district court for a *Franks* hearing. *See Franks v.
Delaware*, 43 U.S. 154 (1978) (holding that a hearing is
required when a defendant makes a substantial preliminary
showing that a false statement necessary to the finding of
probable cause was made knowingly and intentionally, or
with reckless disregard for the truth, and was included by an
affiant in a search warrant affidavit). The court granted the
*Franks* hearing, but ultimately denied Hammond's motions to

suppress and dismiss. Hammond, therefore, pled guilty to Counts Two, Three, Six, and Seven under a conditional plea agreement, while reserving his right to appeal the adverse determinations of his motions to suppress and to dismiss. On the government's motion, the remaining counts were dismissed, and Hammond was sentenced to thirty-seven months on Count 2, to be served consecutively to the sentences imposed on Counts Three, Six, and Seven, for a total of ninety-seven months. Hammond now appeals the district court's denial of his two motions to suppress and dismiss. Because there was no probable cause for the first search warrant and because the good faith rule established in *United States v. Leon*, 468 U.S. 897 (1984), does not apply here, we reverse the district court's denial of Hammond's motion to suppress.

**I**

On August 6, 1999, Detective Tim Engle filled out an application for a warrant to search Hammond's property, including all buildings, vehicles, and persons present on the property at the time of the search. Probable cause for the warrant was substantiated by Detective Engle's affidavit, which was attached to the application. In the affidavit, detective Engle stated that:

> During the first week of April 1999, [Deputy] Danny Keeney received information from Jeremy Holt stating that he had attempted to steal marijuana from an indoor grow operation belonging to Glenn Hammonds [sic] in Rockcastle Co. on KY-1955. Holt stated that he was shot at and that he got away, but that they were looking for him. Holt stated that the residence was located off KY-1955 beside Morning View Church and that the Location had a gate across the driveway which lead [sic] to a barn/garage style building. Holt stated that the operation was inside a side room of the building. On 4-20-99 Det. Tim Engle conducted a drive-by recon of the location and verified the complaint. Since this time we

> have determined that Hammond does occupy this location. Since this time Rockcastle Co. Sheriff's office has received numerous complaints on this residence and subject stating that the operation was there, confirming the complaint from Holt.

As it turned out, several of the statements made by Detective Engle in the above quoted portion of his affidavit were false. First, Holt did not state that the operation was "inside a side room of the building," nor did he mention an "indoor grow operation," although he did refer to Hammond's garage. Second, although Detective Engle's statement implies that he drove by Hammond's property as a result of the complaint made by Holt, and in so doing verified the information supplied by Holt, that was not the case. Detective Engle admits that he did not find out about Holt's complaint until August 5 or 6, when he filled out the application for the warrant and instead drove by Hammond's property at an earlier date, on the basis of "numerous," unspecified, and anonymous complaints received by the police, complaining about the "Hammonds raising marijuana up on Red Hill." The dispatcher admitted that the brother of Glen Hammond lived on Red Hill, and professed ignorance of how many other Hammond households may exist on Red Hill in Rockcastle County. Third, Engle testified at the evidentiary hearing that all he was able to verify by driving by Hammond's property was the fact that a driveway existed off the main road at the entrance to Hammond's property with a gate across it.

Detective Engle's affidavit, however, did not end there. Engle went on to explain that he had conducted the following independent investigation in order to verify the information he had obtained on Hammond's alleged growing operation:

> In addition to confirming the complaints, on 8-5-99 I subpoenaed the power records of Glenn Hammonds [sic]. These records indicate a trailer on the property which is using 400 to 700 kilowatts of power. However there is no trailer on the property. The other power record #02-

1235-48-001 shows power usage that is consistent with a dwelling. However during the observation of the location no windows were observed in the building in question. This along with a security gate, satellite dish, and no trespassing signs tells me that this subject is security conscious which is consistent with other marijuana growers. On 8-5-99 at approx. 0230 hrs. I conducted an Aerial Thermal Image of the location in question that is consistent with other indoor grow operations investigated by this officer.

Again, there were several inaccuracies in Detective Engle's statement. First, although Engle stated that there was no trailer, there is a trailer located at the back of the property. Second, as stipulated to by the government, the power usage records were not for the buildings they were attributed to in the affidavit. The record that was claimed to be for a trailer, was actually the power usage record of the building within which the marijuana was subsequently found. The other power usage record, which was "consistent with a dwelling," was for Hammond's residence and not for the building identified by Engle as having no windows. Third, the building that Engle claimed had no windows does in fact have windows, although it is unclear from the photograph in the record whether the only windows it has are dormer windows. The government has agreed that the power usage records were incorrectly referred to in the affidavit. Fourth, the "security gate" did not have security features of any kind, as the district court found. Finally, the government has stipulated that the thermal imaging can not be considered, in accordance with the recent Supreme Court decision of *Kyllo v. United States*, 533 U.S. 27, 34-35 (2001), which held that thermal imaging used to measure the heat emanating from a home constitutes a search, requiring a warrant.[1]

---

[1]We note that the government's stipulation may have been improvident because of our relatively recent decision in *United States v. Elkins*, 300 F.3d 638 (6th Cir. 2002). In *Elkins*, we distinguished between

A state judge, on the basis of the information contained in Detective Engle's affidavit, issued the requested search warrant. On August 6, 1999, Detective Engle, along with approximately thirteen other officers, executed the warrant. During the search, a vehicle drove across Hammond's property, in order to get to an adjoining plot. Several officers followed the vehicle, which was driven by Bill Ponder, the son of the adjoining property owner. Bill Ponder was approached by law enforcement officers on the scene and consented to their searching his vehicle, person, and trailer. The officers discovered marijuana in the trailer.

While following Ponder across Hammond's property, the officers passed a roadway that led to a building, which had not been previously identified by the officers conducting the search, and which was not included in the warrant under which they were operating. Ponder told the officers that the building was the residence of Glen and Judy Hammond. Late in the evening of that same day, Detective Moore sought and obtained a search warrant for this building.

During the search of the property, the officers discovered marijuana growing inside a barn-like building, along with sixteen firearms and ammunition, a disassembled sawed-off shotgun, and four electric blasting caps. Outside the building, the officers found more marijuana and another firearm, alleged to be a machine gun. On the Ponder property, the officers discovered marijuana in a trailer that was titled to Hammond.

---

the use of thermal imaging on a home and the use of such imaging on commercial property, and noted that since commercial property enjoys a lesser expectation of privacy, it is unlikely that the Supreme Court's holding in *Kyllo* would apply. *Id*. at 646. Nevertheless, the *Elkins* panel declined to reach that issue since it was unnecessary to the resolution of the case, and here we too decline to reach that issue since the government has stipulated that *Kyllo* applies, and there is no discussion on record as to whether the barn structure at issue would properly be considered a residential or commercial structure.

Hammond was not present during the execution of either search warrant, and on August 10, 1999, a warrant was issued for his arrest. On August 17, 1999, the Peach County Sheriff's Department in Georgia stopped a tractor-trailer in which Hammond was riding as a passenger, while his cousin drove. Hammond was arrested for possession of a concealed .22-caliber single-shot pistol, possession of a small amount of methamphetamine, and possession of a firearm during the commission of a crime. When the Georgia Sheriff's Department learned of the outstanding arrest warrant issued in this case, it transported Hammond to Kentucky. Other firearms were located inside the truck, but none of them, including the .22-caliber pistol in Hammond's pocket, are listed in the indictment for this case.

## II

### *Motion to Suppress*

The district court's conclusions of law regarding a motion to suppress are reviewed *de novo,* while the district court's findings of fact are reviewed only for clear error. *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000). In addition, the evidence is to be reviewed "in the light most likely to support the district court's decision." *Ibid.* (quoting *United States v. Navarro-Comacho*, 186 F.3d 701, 705 (6th Cir. 1999)).

Hammond contends that Detective Engle's affidavit in support of the warrant issued to search Hammond's property contained false information that was essential to the probable cause determination made in issuing the search warrant. Hammond argues that as a result the evidence seized from his property in both the initial search done, based on the allegedly faulty affidavit, and in the subsequent search done later that day on the basis of information garnered during the initial search, should be suppressed. In particular, Hammond maintains that the information obtained from the informant, Holt, and restated in Detective Engle's affidavit was stale and

unreliable, the reconnaissance drive that Engle said he did in order to verify Holt's complaint was actually done prior to Holt's complaint and could not have "verified" anything other than the fact that a driveway existed with a gate across it off of the main road, that Engle lied about the specific information supposedly supplied by Holt with regard to the location of the growing operation on Hammond's property, that the power usage records were not for the locations specified in the affidavit and must therefore be excluded from consideration, and that the thermal imaging information was illegally obtained and must also be excluded from consideration. The district court when ruling on this question held that although there were several misstatements in the affidavit, there was still enough to establish probable cause "[g]iven the Holt 'tip' (even if the reference to 'an outdoor grow operation' in a 'side room' is redacted), the confirmation of the location of the Hammond premises, the FLIR thermal image results, and the assertion that the 'Rockcastle Sherriff's Office has received numerous complaints on this residence and subject [Glen Hammond]' regarding marijuana."

The critical question to be determined is whether the affidavit, apart from the tainted information that is either inaccurate or illegally obtained, provides the requisite probable cause to sustain a search warrant. *See United States v. Charles*, 138 F.3d 257, 263 (6th Cir. 1998). In determining if probable cause exists, the court must examine the totality of the circumstances. *See United States v. Van Shutters*, 163 F.3d 331, 336 (6th Cir. 1998). If there was not probable cause for searching Hammond's property, then the only way that the evidence at issue in this case would survive suppression is through the *Leon* good-faith rule.

### *Probable Cause*

Since the district court's ruling, *Kyllo* was decided by the Supreme Court and on that basis the government stipulated that the thermal imaging results could not be considered.

This leaves us with three pieces of information in Engle's affidavit that are not tainted. First, there is the fact that Holt gave Keeney a "tip" that there was "dope" on Glen Hammond's property, although this tip was received at some point prior to March 1999 – at least five months before Detective Engle requested the search warrant — and does not specify the location of the marijuana on the property. Second, there is the "verification" of Hammond's address by Engle. And third, there were several anonymous phone calls vaguely complaining about "the Hammonds on Red Hill" raising marijuana.[2] Everything else contained in the affidavit was either the result of a mistake, a fabrication, or cannot legally be considered.

The government argues that Holt's "tip" was enough on its own to produce probable cause and relies on *United States v. Allen*, 211 F.3d 970, 976 (6th Cir. 2000) (en banc), in which this court held that under a totality of the circumstances approach, a confidential informant's information need not always be independently corroborated. Alternatively, the government contends that the good faith exception to the warrant requirement validates the search. *See United States v. Leon*, 468 U.S. 897, 926 (1984) (holding that the exclusionary rule should not be used to suppress evidence when the officers who obtained the evidence acted in reasonable reliance on a search warrant issued by a neutral and detached magistrate that is later found to be invalid). We find neither of these arguments convincing.

### *Holt's Tip*

Holt's tip was not stale, as Hammond contends. A determination of whether an informant's tip is stale rests on several factors including "the character of the crime (chance

---

[2] The calls only referenced "the Hammonds" and did not specifically identify Glen Hammond, the property in question, or the absence of other persons named Hammond in the vicinity.

encounter in the night or regenerating conspiracy?), the criminal (nomadic or entrenched?), the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), the place to be searched (mere criminal forum of convenience or secure operational base?)." *United States v. Greene*, 250 F.3d 471, 480-81 (6th Cir. 2001) (quoting *United States v. Spikes*, 158 F.3d 913, 923 (6th Cir. 1998)). In this case, the crime of drug trafficking is ongoing, the defendant's location is established, the drugs were likely to be there for an indefinite period of time, and the place to be searched constituted a secure operational base. Holt's tip was not, therefore, stale.

Nevertheless, Holt's information was vague, not obviously reliable, and entirely unsupported by any independent investigation on the part of the police. The tip, on its own, is insufficient for establishing probable cause.

In *Allen*, this court stated that "where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate may believe that evidence of a crime will be found." *Allen*, 211 F.3d at 975. However, here, as noted by the federal magistrate judge in his report and recommendation, officer Engle did not provide any detail as to the reliability of the named informant. The affidavit at issue in *Allen* noted that the officer knew the informant for five years. Here, Detective Engle did not state how long Keeney had known Holt, or if he, himself, knew Holt. Detective Engle did not even state that Holt was a "reliable source" or that he had given the police reliable information in the past. *Cf. United States v. Pinson*, 321 F.3d 558, 563 (6th Cir. 2003) (holding that an affidavit met "the *Allen* test" where the officer stated in the affidavit that he knew the informant was "reliable from past information received from said [informant]," the informant was familiar with the drugs at issue from "past experience and exposure," and where the affidavit contained the officer's personal observation of the

informant's drug deal, his pat down of the informant before and after the purchase of the narcotics, and the fact that the drugs purchased tested positive for cocaine base). Holt's tip does not pass the *Allen* test and, therefore, cannot constitute probable cause on its own.

Despite the minimal probative value of Holt's information, the tip can take on an increased level of significance for probable cause purposes, if corroborated by the police through subsequent investigation. *See United States v. Leake*, 998 F.2d 1359, 1365 (6th Cir. 1993). *See also United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). For example, in *United States v. Smith*, 783 F.2d 648 (6th Cir. 1986), we considered a warrant obtained on the basis of a tip provided by a confidential informant, whose information was corroborated through the independent investigation of the police. In the supporting affidavit, the officer stated as follows:

> On the 20th day of August, 1984, at approximately 5:00 p.m., the affiant received information from a reliable informant that Eric Helton was producing marijuana at his residence. Acting on the information received, affiant conducted the following independent investigation: On August 21, 1984 at 11:30 A.M. Detective William Stweart [sic] observed a marijuana plant growing beside the residence of Eric Helton.

*Smith*, 783 F.2d at 649. The panel stated that the tip standing alone would not have been sufficient to establish probable cause, *Smith*, 783 F.2d at 650, yet upheld the warrant because the officer's observations verified the tip and, in addition, the informant's reliability had been established.

In a more recent case, a warrant was challenged as insufficient to establish probable cause because the detective's independent investigation was inadequate to corroborate the informant's claims. *United States v. King*, 227 F.3d 732, 741 (6th Cir. 2000). The panel upheld the

warrant, because it "was based upon information provided by a known reliable informant, and was verified by Detective Gannon to the extent possible." *Id*. at 742. Specifically, the affidavit indicated that the confidential informant had "provided credible information in the past which has led to the arrest and/or conviction of 'more than seventy individuals for violations of state and/or federal drug laws, as well as the confiscation of more than $100,000.00 and 5 kilograms of controlled substances.'" *Ibid*. In addition, the confidential informant had described the defendant's illegal activity and residence in significant detail, noting, for example, that the defendant had received a large amount of cocaine within the past day from a man by the name of Antonio Cook and that the defendant used his car in the distribution of that cocaine, which he described as a "1980's model gray Chevrolet Cavalier, Ohio Temporary License Number K591513." *Ibid*. The confidential informant was also able to describe the defendant's house as being

> the downstairs unit in a two family, two and one half story, white wood sided dwelling with green trim, the numbers '1439,' the address for the upstairs unit, clearly visible on the south side of the entrance door to the upstairs unit, the structure being located on the east side of East 116th Street, facing west.

*Ibid*. Finally, the police corroborated the tip provided by the informant. First, the detective on the case verified that the vehicle described by the informant was in fact registered to the defendant at the address provided by the informant. Second, the detective verified that the defendant had a prior history of criminal offenses. Third, the detective stated that "Antonio Cook [was] a person known to members of the Task Force as a supplier of cocaine on the east side of Cleveland." *Id*. at 741.

Given these examples, it is apparent that the information left for us to rely on for probable cause in this case is insufficient. Neither the anonymous phone calls nor

Detective Engle's drive by Hammond's residence can be considered substantial enough to corroborate Holt's tip for purposes of probable cause. First, Holt was not established as a reliable informant in any respect. Second, the information provided by Holt and the anonymous callers was lacking in detail with respect to the location of Hammond's residence, the location of the marijuana within Hammond's residence, and specifics regarding the illegal operation allegedly conducted by Hammond. The information does not, in quantity or quality, approach the detail offered, for example, in *Smith* or *King*. Third, Detective Engle, when driving by the property, noticed nothing out of the ordinary at the Hammond residence. Detective Engle only served to corroborate the fact that a Hammond lived in Rockcastle County on KY 1955 and that there was a gate across his property. Such information would not be difficult for anyone to obtain and does not suggest criminal activity. This, along with anonymous phone calls providing absolutely no specific information, is not enough for probable cause.

### Good Faith Exception

It is well established that the Fourth Amendment exclusionary rule does not apply in cases where law enforcement officers reasonably rely in good faith upon a search warrant, even if that warrant is ultimately found to be invalid. *Leon*, 468 U.S. at 922. Nevertheless, this good-faith exception to the exclusionary rule established in *Leon* does not apply when 1) the supporting affidavit contained knowing or reckless falsity, 2) the issuing magistrate failed to act in a neutral and detached fashion and served merely as a rubber stamp for the police; 3) the supporting affidavit did not provide the magistrate with a substantial basis for determining the existence of probable cause; or 4) the officer's reliance on the warrant was neither in good faith nor objectively reasonable.

There is no question that Officer Engle acted with reckless disregard for the truth in view of the remarkable inaccuracies

presented in his affidavit. Detective Engle by his own admission was informed by Deputy Keeney of Holt's tip within a day of filling out the application for the warrant in this case, yet Engle implied in his affidavit that he drove by Hammond's property in order to verify Holt's tip in April. Detective Engle stated that Holt informed Deputy Keeney that the marijuana was located in a "side room" of the building, yet Deputy Keeney testified at the *Franks* hearing that he did not recall such a statement. Detective Engle stated in his affidavit that he "verified [Holt's] complaint" when he drove by Hammond's property, yet he did not see any marijuana growing or for that matter any indications of criminal activity. All he was able to "verify" was that a Glen Hammond lived in Rockcastle County off of KY 1955. Detective Engle stated with certainty that there was no trailer on the Hammond property, yet there was a trailer. The power records were not for the buildings they were attributed to in the affidavit. The building that Engle claimed to have no windows, did in fact have windows. This is not the case in which an officer made a small error in the affidavit, when applying for a warrant. The number of falsehoods and half-truths told are substantial and reflect, at the very least, a reckless disregard for the truth. For these reasons, we should reverse the district court's ruling and grant Hammond's motion to suppress the evidence seized in both searches.[3]

### III

Hammond also contends that there was insufficient evidence to support his conviction under 18 U.S.C. § 924(c)(1). However, given our decision to grant Hammond's motion to suppress, it is unnecessary for us to evaluate this second issue on appeal. For the reasons given above, we REVERSE the district court's denial of

---

[3]The government concedes that if the first warrant is invalidated, the second warrant would also be invalidated, as it would be "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471 (1963).

Hammond's suppression motion and REMAND this case for proceedings consistent with this opinion.