NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0105n.06

Case No. 22-5651

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Feb 27, 2023
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| WILLIAM RAY HARGIS, | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
| | ) | O P I N I O N |

Before: McKEAGUE, THAPAR, and LARSEN, Circuit Judges.

**McKEAGUE, Circuit Judge.** Defendant William R. Hargis pleaded guilty to drug and firearms offenses. He appeals the district court's denial of his motion to suppress evidence seized during a search pursuant to a warrant of an office in a commercial building in Lexington, Kentucky. Hargis alleges that the search was not supported by probable cause, as the bulk of the affidavit supporting the warrant relied on information from an informant whose reliability was insufficiently established and whose information was insufficiently corroborated. Because we find that there was a substantial basis to believe probable cause existed based on the warrant affidavit, we AFFIRM.

**I.**

### 1. Facts

A series of events, beginning in April 2021, led to Lexington Police Department Detective Brandon Hazelwood seeking and receiving a search warrant for 1795 Alysheba Way, Lexington,

Kentucky, Unit 1002 (the "Alysheba Office" or "Office"). In the affidavit supporting the warrant, Hazelwood explained the events in detail:

First, on April 29, 2021, Hazelwood received information from a confidential informant (CI) stating that a young, Black male going by the name "Youngin" was trafficking large amounts of drugs, namely heroin and/or fentanyl. The CI alleged that Youngin drove a newer silver Dodge Ram pickup truck. Hazelwood later met with the CI on two occasions to orchestrate and observe controlled drug purchases between the CI and Youngin. At both controlled buys, police observed the described silver Dodge Ram truck. The CI later told police he believed Youngin was an individual named Lamonte Brown, and positively identified a picture of Brown as Youngin.

Police then began surveilling Brown. On May 11, 2021, officers observed Brown meeting outside his residence with an unidentified black male, later discovered to be Tequan Anderson.[1] Anderson was seen exiting a green Dodge Charger, walking over to the Dodge Ram truck identified as Brown's vehicle, and returning to the Charger with a black bag. Anderson was then seen exiting the Charger with the bag and entering a black Toyota Camry, before leaving the area. Officers pulled over Anderson in the Camry, eventually searching the vehicle and uncovering a pound of methamphetamine, an ounce of cocaine, individual bags of marijuana, drug paraphernalia, and a large amount of cash. During the search, Anderson fled on foot, but was apprehended and taken into custody.

Anderson eventually told the police that he received the drugs from his cousin, Brown, just prior to leaving Brown's residence (where Anderson had been seen interacting with Brown). He alleged that he could purchase a large amount of drugs from Brown, and that Brown and his associates stored drugs at the Alysheba Office, which is located in a commercial townhouse-style

---

[1] The affidavit refers to Anderson as "Tequan," while the briefs use "Tiquan."

office park. Anderson directed the officers to the Office and told officers the door would have a keypad. Hazelwood observed upon arrival at the Office that the door did indeed have a keypad. Anderson also told officers that he had been inside the Office within the last week with Brown and a white male called "Mitch," where he observed Brown and Mitch packaging, cutting, and storing drugs. He stated that there were approximately 40 kilos of drugs hidden in the ceiling of the Office.

Hazelwood then observed Anderson make a FaceTime call (a video call using an iPhone) to Brown, during which Anderson told Brown he needed to make a "play" (slang for a drug transaction). Brown asked how much he needed, Anderson replied 3 kilos of heroin, and Brown agreed to the sale, telling Anderson that Brown needed to pick up the drugs. Brown also told Anderson to meet him for the deal at a separate location. Anderson told officers that if Brown needed to pick up drugs as he said, it would be from the Alysheba Office. A short time later, officers observed the silver Dodge Ram pickup truck frequently driven by Brown enter the parking lot of the office complex; it "slowly drove by the building, circled detectives, and then left the parking lot." R. 39-1 at PID 186.

Based on this information in the affidavit, Fayette District Court Judge Joseph T. Bouvier issued a search warrant for the Alysheba Office the next day. The subsequent search of the Office revealed over fifty pounds of methamphetamine, half a pound of fentanyl, a cutting agent, firearms, and paraphernalia.

Hargis was arrested after an interaction with officers that began while Hazelwood was obtaining the search warrant for the Office. Officers observed a black GMC Denali—later determined to be driven by Hargis—park in front of the Alysheba Office building. Police saw a man exit the vehicle, go inside the office building, and come out shortly after with a black bag, reentering the vehicle. Police began to follow the vehicle, which eventually stopped at a parking

lot in Hamburg. In the parking lot, another vehicle, driven by an individual named Jonathan Tye, pulled up beside the Denali. Tye subsequently got into the Denali with Hargis. Tye then exited the Denali and returned to his own vehicle. Police removed Hargis and Tye from their vehicles and searched them. They found a firearm in Hargis's vehicle and a large quantity of pressed Xanax pills in Tye's vehicle. Tye told officers he bought the pills from Hargis. Police recovered $5,000 in cash either from Hargis's vehicle or his person. Hargis was detained and ultimately arrested.

**2. Procedural History**

On June 17, 2021, Hargis was indicted on two charges. On August 5, 2021, a superseding indictment charged him with (a) conspiracy to distribute 50 grams or more of methamphetamine and 400 grams or more of fentanyl, both Schedule II controlled substances, in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846 (Count 1); (b) possession of 500 grams or more of methamphetamine and 400 grams or more of fentanyl with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (c) (Count 2); and (c) possession of firearms in furtherance of the drug-trafficking crimes charged in Counts I and II, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 4).[2] Later, a second superseding indictment corrected a typographical error in the previous indictment in Count 2 (which incorrectly listed the amount of methamphetamine as 500 grams) and added an additional count charging Hargis with money-laundering conspiracy in violation of 18 U.S.C. § 1956(a)(1)(A)(i) and 18 U.S.C. § 1956(h) (Count 5).

Hargis filed a motion to suppress the fruits of the search of the Alysheba Office, alleging lack of probable cause for the search warrant.[3] The district court denied the motion. The court

---

[2] Count 3 related only to Anderson, not Hargis.

[3] Hargis also filed a motion to suppress relating to his supposedly illegal detention, which was denied.

found that the information in the warrant affidavit established probable cause, and that the information given to police by Anderson was sufficiently corroborated.

Hargis eventually pleaded guilty to each count in which he was named pursuant to a written plea agreement. In the agreement, he reserved:

> [T]he right to appeal the District Court's denial of his Motion to Suppress, specifically limited to the District Court's determination that there was sufficient probable cause for the issuance of the Search Warrant for the [Alysheba Office].

R. 126 at PID 659 (internal citation omitted). On July 18, 2022, Hargis was sentenced to 420 total months imprisonment. On July 29, 2022, Hargis timely appealed the suppression motion denial.

**II.**

Hargis challenges the probable cause supporting the search of the Alysheba Office on two fronts: indicia of reliability and corroboration of the information given by informant Anderson that formed the bulk of the warrant affidavit. We conclude that there was sufficient corroboration of Anderson's statements, and that even if there were not, the good-faith exception to the exclusionary rule applies.[4]

1. **Corroboration**

*a.) Standard of Review*

When reviewing a district court's ruling regarding a suppression motion, we apply a de novo standard to the district court's legal determinations and a clear error standard to its factual findings. *United States v. Lott*, 954 F.3d 919, 922 (6th Cir. 2020). In cases such as this one—where a state magistrate approved the challenged search warrant, and the district court denied the motion

---

[4] Because we conclude that there was sufficient corroboration of Anderson's statements, we decline to address whether the warrant affidavit contained sufficient indicia of Anderson's reliability such that corroboration was not needed, or Hargis's contention that the government conceded below and therefore waived its reliability argument. *See United States v. Ray*, 803 F.3d 244, 275 (6th Cir. 2015) (sufficient corroboration can overcome lack of information regarding reliability).

to suppress—our review is extremely deferential. Specifically, we view the evidence in a light most favorable to the Government, *see United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019), and analyze only whether the magistrate had a substantial basis for finding probable cause for the search, *see United States v. Perry*, 864 F.3d 412, 415 (6th Cir. 2017). Great deference is given to the magistrate's decision; "the Supreme Court has repeatedly said that after-the-fact scrutiny . . . should not take the form of *de novo* review." *United States v. Kinison*, 710 F.3d 678, 681–82 (6th Cir. 2013) (cleaned up). In reviewing a state magistrate's determination, this Court may consider only information found within the "four corners of the affidavit." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009).  In order to find probable cause to search a particular place, a magistrate must find that, under the totality of the circumstances, there is "a fair probability that contraband or evidence of a crime will be found" there. *United States v. Brown*, 828 F.3d 375, 381 (6th Cir. 2016).

*b.) Analysis*

On appeal, Hargis argues that the warrant affidavit provided no "meaningful indicia of reliability on the part of the informant [Anderson]," and no "substantial corroboration of [the] alleged nexus" between the Alysheba Office and the criminal activity proffered by Anderson. Appellant's Br. at 19. In general, when a warrant relies upon information from a confidential informant to generate probable cause, this Court must "examin[e] the 'veracity, reliability, and basis of knowledge' of the source." *United States v. Helton*, 35 F.4th 511, 518 (6th Cir. 2022) (quoting *United States v. Hines*, 885 F.3d 919, 923 (6th Cir. 2018)). An affidavit sufficiently supports a finding of probable cause "[s]o long as an issuing judge is 'informed of some of the underlying circumstances . . . from which the officer concluded that the informant, whose identity need not be disclosed, was credible, or his information reliable. . . .'" *United States v. May*, 399

F.3d 817, 824 (6th Cir. 2005) (first alteration in the original) (quoting *Aguilar v. Texas*, 378 U.S. 108, 114 (1964)). Even if an affidavit is deficient in establishing an informant's reliability, it "may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information." *United States v. Ray*, 803 F.3d 244, 275 (6th Cir. 2015).

Corroboration can take many forms. A police officer personally witnessing a controlled drug buy between an informant and a suspect following the informant's tip can constitute sufficient corroboration. *See, e.g.*, *United States v. Jackson*, 470 F.3d 299, 307–08 (6th Cir. 2006); *United States v. Sales*, 247 F. App'x 730, 733–34 (6th Cir. 2007). However, we have never said that observation of a successful controlled purchase of narcotics is necessary for sufficient corroboration, as Appellant seems to imply. In fact, we have stated that:

> The additional evidence substantiating an informant's reliability need not be obtained from a source unrelated to the confidential informant—*e.g.*, an independent police investigation or a second confidential informant—but may be any set of facts that support the accuracy of the information supplied by the informant.

*May*, 399 F.3d at 824. The corroboration necessary is that which would, in combination with the informant's statement, create a "fair probability that contraband or evidence of a crime will be found" at the searched location. *Brown*, 828 F.3d at 381.

This is a flexible, commonsense inquiry, not one driven by rigid rules. *Cf. Illinois v. Gates*, 462 U.S. 213, 232 (1983) ("[P]robable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules."); *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009) ("[A] judge issuing a warrant must 'make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" (citation omitted)); *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006) (stating that warrant affidavits "[m]ust be tested and interpreted by

magistrates and courts in a commonsense and realistic fashion" (quoting *United States v. Ventresca*, 380 U.S. 102, 108 (1965))). And we have, in multiple cases, found corroboration without a subsequent controlled illegal transaction. *See, e.g.*, *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000); *May*, 399 F.3d at 825; *United States v. Williams*, 224 F.3d 530, 532–33 (6th Cir. 2000); *United States v. Martin*, 526 F.3d 926, 937 (6th Cir. 2008) (finding sufficient corroboration when police found cocaine residue in the defendant's trash and the defendant had an extensive criminal history related to drugs); *cf. United States v. Smith*, 182 F.3d 473, 480–81 (6th Cir. 1999) ("Defendant's position, essentially, is that unless the police conducted surveillance and saw defendant with a gun, there would be insufficient corroboration. We emphatically disagree.").

On the whole, there is sufficient corroboration in this case. Here, the informant, Anderson, alleged with specificity that he had received the drugs found by police in his vehicle from Brown, that he could purchase more from Brown, and that he had recently been inside the Alysheba Office, the entrance of which he described. Anderson alleged that within the last week he had been inside the Office with Brown and an associate, at which time he observed them packaging, cutting, and storing drugs, and that there were 40 kilos of drugs in the Office's ceiling. The corroborating evidence for this information that the Government points to includes:

> (1) the two controlled drug buys orchestrated by police between the confidential informant and Brown before police spoke to Anderson;
>
> (2) the incident in which police observed Anderson apparently receive a bag from Brown outside Brown's residence, after which time they pulled Anderson over and found drugs and drug paraphernalia in his car;
>
> (3) the fact that the door to the Alysheba Office matched Anderson's description;
>
> (4) the FaceTime call in which Anderson arranged to purchase drugs from Brown, and Brown told Anderson that Brown would need to pick up the drugs; and
>
> (5) Anderson's prediction that Brown would pick up the drugs from the Office, followed by police's observation shortly after of the car apparently belonging to

Brown entering the parking lot for the Office building, "slowly [driving] by the building, circl[ing] detectives, and then [leaving] the parking lot," R. 39-1 at PID 186.

This evidence directly links Brown to the Alysheba Office and connects Brown and the Office to drug activity, corroborating Anderson's allegations that Brown used the Office to process and store drugs. And Anderson's correct predictions regarding the appearance of the Office door and Brown stopping by the Office after their call[5] lend even more credence to his information. *See Illinois v. Gates*, 462 U.S. 213, 244 (1983) ("The corroboration of the letter's predictions that the Gateses' car would be in Florida, that Lance Gates would fly to Florida in the next day or so, and that he would drive the car north toward Bloomingdale all indicated, albeit not with certainty, that the informant's other assertions also were true. '[Because] an informant is right about some things, he is more probably right about other facts.'" (quoting *Spinelli v. United States*, 393 U.S. 410, 427 (1969) (White, J., concurring))).

There is just as much, if not more, corroborating information here than in several other cases in which we have found sufficient corroboration. For example, in *Tuttle*, an informant told police that an "auto sales shop was currently selling cars and trucks assembled with stolen parts by [the defendant] Tuttle at a garage rented by Tuttle on property owned by [his] co-defendant. . . ." 200 F.3d at 893. A detective involved in the investigation had previously inspected an automobile purchased from that store, which was rebuilt for the store by Tuttle, and had

---

[5] Appellant argues that the fact that Brown's car drove away upon reaching the parking lot cuts against corroboration of Anderson's statements, and that the Government cannot argue that the car turned away upon seeing officers as that information was not apparent from the warrant affidavit. However, the affidavit stated: "Shortly after the phone call was made to Mr. Brown, the above listed Silver Dodge Ram Pickup truck was observed pulling into the parking lot of the office building. The truck slowly drove by the building, *circled detectives*, and then left the parking lot." R. 39-1 at PID 186 (emphasis added). From this information, the magistrate could have easily inferred that the driver of the car saw the detectives and was scared off, which is completely in line with what would happen if the driver was there to pick up drugs. Thus, taking the facts in the light most favorable to the Government, as we must, *see Ickes*, 922 F.3d at 710, this fact corroborates Anderson's story rather than cutting against it.

determined that the car was made from stolen parts. *Id.* This Court concluded that "[t]his information already within [the detective's] knowledge clearly provided independent corroboration of the informant and the information the informant relayed that Tuttle was currently rebuilding trucks with stolen parts. . . ." *Id.* at 894. Here, there is even more evidence linking Brown to drug activity than Tuttle to illegal activity, along with at least some evidence linking Brown's drug activity to the Alysheba Office (his arrival to the Office after the phone call).

In *May*, we found sufficient corroboration of an informant's tip that the defendant had obtained powder cocaine and "would have the cocaine cooked into crack cocaine at 130 E. Warren Ave. utilizing [the informant]," where police observed the informant entering the Warren Ave. residence, the informant told police that he was in the process of cooking the cocaine for the defendant, police knew that the informant was involved in other unrelated drug activity, and a years-earlier search of the residence had revealed drugs and weapons. 399 F.3d at 825. Further, in *United States v. King*, a search warrant relied on an informant's tip that the defendant was trafficking drugs, and that a drug dealer, Cook, had recently delivered drugs to the defendant's residence. 227 F.3d 732, 742 (6th Cir. 2000). The court found the following corroborating evidence of the informant's statement sufficient:

> [T]he affidavit indicates that Detective Gannon verified with the Ohio Department of Motor Vehicles that the vehicle described by the informant was registered to Defendant and that the address provided by the informant was Defendant's address. Detective Gannon also verified that Defendant had a prior history of criminal offenses for which he had spent time in prison. Finally, Detective Gannon, as an experienced member of the task force established to ferret out drug-related crimes, averred that he was aware that Antonio Cook is a person known to members of the task force as a supplier of cocaine, which further supported the [informant's] allegations.

*Id.* at 742 (internal citations omitted).

Here, similar to *May*, Anderson's predictions were accurate. And similar to both *May* and *King*, officers in this case were aware of information directly linking both Anderson and Brown to

drug activity. Just as we found probable cause in *Tuttle*, *May*, and *King*, so we find probable cause here.

Appellant argues that the corroborating information proffered by the Government is not enough because no controlled purchase of drugs was observed after Anderson's statements to the police, Brown did not actually attempt to access the Office after the FaceTime call, and the description of the door only constituted "details on the margins." Appellant's Br. at 24. However, as stated, subsequent controlled drug purchases are not required, and it is clear that the corroboration in this case extended far beyond marginal, non-incriminating details. The corroborating evidence included the controlled buys with Brown before Anderson's apprehension, drugs found on Anderson just after meeting with Brown, the FaceTime call during which Anderson arranged to buy drugs from Brown, and the appearance of Brown's vehicle at the Office building shortly after that call. This is all incriminating and substantive, rather than marginal.

The cases cited by Appellant as support for his position are inapposite. In *United States v. Higgins*, officers arrested an individual after finding drugs in his car; the individual alleged that he had bought the drugs from the defendant at his home. 557 F.3d 381, 385 (6th Cir. 2009). The officers elicited similar statements from two of the individual's passengers. *Id.* This Court found that there was insufficient corroboration of the informant's information as the police did not "corroborate any of the informant's statements" that he had purchased drugs at the defendant's address "beyond the innocent fact that [the defendant] lived at the stated location and the irrelevant . . . fact that [the defendant] had a criminal record." *Id.* at 390. We noted that the affidavit was silent on how the other passengers corroborated the informant's statements, and emphasized the fact that the affidavit did not "contain any assertion that the informant had been inside [the defendant's] apartment or that the informant had seen drugs or other evidence in or around [the]

apartment." *Id.* Here, by contrast, there was plenty of corroborating information for Anderson's statements regarding illegal activity, including the controlled drug buys with Brown; the interaction between Brown and Anderson outside Brown's residence, after which police confiscated drugs from Anderson; the FaceTime call between Brown and Anderson arranging a drug deal; and Anderson's accurate prediction that Brown would come to the Alysheba Office after their call. And Anderson alleged to have recently been inside the Office and to have seen illegal drug activity there at that time. Thus, *Higgins* is not controlling here.

*United States v. Neal* is also inapposite. 577 F. App'x 434 (6th Cir. 2014). In that case, a confidential informant told police officers that she had twice traveled with an individual to his brother's residence, where the individual delivered cocaine; he and his brother then allegedly sold the cocaine out of the house and split the profits. *Id.* at 436–37. Police confirmed that the address the informant alleged was inputted by the individual into the car's GPS on their trips, which led them to the area of the residence, did not exist, and police "hypothesized" that using the fake address would lead the driver to a spot in close proximity to the residence. *Id.* at 438. Police also confirmed that the residence's appearance was as the informant described and that the brother resided there. *Id.* at 437–38. Police further observed that an "inordinate" number of people visited the residence, and discovered that the brothers had criminal records relating to drugs. *Id.* at 438. Finally, the informant told the police about a third upcoming trip to the residence; the police tracked her location on the trip and saw the car she alleged to have been traveling in arrive at the residence, observing the driver grabbing a bag out of the trunk and both driver and passenger heading into the house. *Id.* Based on this information, police obtained a search warrant for the residence. *Id.*

This Court concluded that there was insufficient corroboration of the informant's statements to support probable cause, as nothing actually corroborated the first two trips, and "none of the corroborating information include[d] any observations of criminal activity." *Id.* at 445. The Court noted that the informant "did not provide any information regarding future events that agents could verify through independent observation to bolster the reliability of the rest of [the informant's] statements." *Id.* at 445–46. Unlike in *Neal*, however, the corroboration here involves more than "innocent facts" and did "include verification of future activities [the informant] stated would happen." *Id.* at 447. Here, police had orchestrated controlled drug buys with Brown, had found drugs in Anderson's car after watching Anderson interact with Brown, observed Anderson arranging a drug deal with Brown, and saw a car that appeared to belong to Brown arrive at the Alysheba Office, as Anderson predicted. This corroboration includes incriminating facts related to drug-dealing and predictions that were fulfilled. *Neal*'s logic thus does not apply here.

Similar differences distinguish this case from others cited by Appellant, which involve minimal or no corroboration of criminal activity and far less specific information on the part of the informant. *See United States v. Helton*, 314 F.3d 812, 823 (6th Cir. 2003) (police did not independently corroborate anonymous tipster's statements that an individual was storing drug money in her house, beyond pointing to telephone records indicating calls between that individual and a suspected drug trafficker); *United States v. Weaver*, 99 F.3d 1372, 1379 (6th Cir. 1996) (no corroboration beyond "innocent details" for informant's assertion that the marijuana he allegedly saw at the defendant's premises was intended for distribution; "the combined boilerplate language and minimal handwritten information provide few, if any, particularized facts of an incriminating nature and little more than conclusory statements of affiant's belief that probable cause existed regarding criminal activity"); *United States v. Hammond*, 351 F.3d 765, 771–72 (6th Cir. 2003)

(no sufficient corroboration of vague statement by informant regarding drug operation at the defendant's residence when purported corroboration included similarly vague anonymous phone calls and a single drive-by of the residence by police). Here, Anderson gave specific, detailed information, and the police investigation before and after interacting with Anderson corroborated criminal activity (via observing controlled buys with Brown, observing Anderson arrange a drug deal with Brown over FaceTime, and observing a car thought to belong to Brown arrive at the Alysheba Office after the call, as predicted by Anderson). This case thus does not fall within the category of cases cited by Appellant wherein little-to-no incriminating information was corroborated.

In light of the substantial corroboration of Anderson's information indicated in the warrant affidavit, we conclude that there was sufficient probable cause such that the magistrate's decision to grant the warrant was not arbitrary. *See United States v. Brown*, 732 F.3d 569, 573 (6th Cir. 2013) ("[W]e may only reverse a magistrate's decision to grant a search warrant if the magistrate arbitrarily exercised his or her authority.").

## 2. The Good-Faith Exception

In light of our conclusion that the magistrate had a sufficient basis to find probable cause, we decline to analyze in full the applicability of the good-faith exception to the exclusionary rule.[6] *See United States v. Frechette*, 583 F.3d 374, 381 (6th Cir. 2009) ("There is no need to go into a lengthy analysis of whether the agents relied on the search warrant in good faith because the magistrate judge had a substantial basis for finding probable cause."). However, we do note that it

---

[6] Appellant argues that the Government waived its ability to argue that the good-faith exception applies, alleging that the Government's discussion of the exception in the briefing was "cursory." However, we decline to view the Government's argument on this front—nearly an entire page of its brief, containing the relevant legal standard and its application—as so cursory as to constitute waiver, particularly as Appellant's own argument regarding the exception is of similar length. This is especially so as here an argument that probable cause exists, which comprised most of the Government's brief, also comprises a large part of the argument that the good-faith exception applies.

is clear here that the exception would apply even if we were to come to the opposite conclusion regarding probable cause.

The good-faith exception applies where officers reasonably rely on a warrant obtained from a neutral judge. *See United States v. McPhearson*, 469 F.3d 518, 525 (6th Cir. 2006). It does not apply:

> (1) when the affidavit supporting the search warrant contains a knowing or reckless falsity; (2) when the magistrate who issued the search warrant wholly abandoned his or her judicial role; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; or (4) when the warrant is so facially deficient that it cannot reasonably be presumed valid.

*Id.* Here, Hargis has not alleged that the warrant contained false information or that the magistrate abandoned his judicial role; he argues only that the "affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable." Appellant's Br. at 26 (quoting *McPhearson*, 469 F.3d at 525). This standard "is less demanding than the 'substantial basis' test necessary for probable cause in assessing the sufficiency of an affidavit." *Neal*, 577 F. App'x at 448. As discussed above, there was a great deal of corroborating information in the affidavit, aligning this case more closely with those that have found probable cause than those that have not. It was therefore not unreasonable for the officers to rely on the state magistrate's determination. Further, in multiple cases upon which Appellant relies, including *Higgins*, upon which Appellant appears to place the most weight, this Court applied the good-faith exception. *See Higgins*, 557 F.3d at 391; *Neal*, 577 F. App'x at 449. As also discussed above, the corroborating evidence here exceeds the corroborating evidence proffered in those cases. Thus, the good-faith exception would apply even if we declined to find probable cause.

### III. CONCLUSION

In sum, we AFFIRM the district court's denial of Hargis's motion to suppress.