[Cite as *State v. Lucas*, 2025-Ohio-4863.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO,<br><br>    Plaintiff - Appellee<br><br>-vs-<br><br>JAMMIE L. LUCAS,<br>(fka Jammie L. Benson),<br><br>    Defendant - Appellant | Case No. 25-CA-08<br><br>Opinion & Judgment Entry<br><br>Appeal from the Court of Common Pleas<br>of Guernsey County,<br>Case No. 24-CR-66<br><br>Judgment:  Affirmed<br><br>Date of Judgment:  October 22, 2025 |

BEFORE: Andrew J. King; Kevin W. Popham; David M. Gormley, Judges

APPEARANCES: Mark A. Perlaky, for Plaintiff-Appellee; Todd W. Barstow, for Defendant-Appellant.

*Gormley, J.*

{¶1} Defendant Jammie Lucas argues in this appeal that the trial court should have granted her motion to suppress. In that motion, Lucas argued that a search warrant authorizing the search in question was not supported by a properly sworn affidavit. We conclude that whatever the merits of Lucas's argument about alleged deficiencies in the search-warrant affidavit, the good-faith exception to the exclusionary rule justified the admission of the evidence collected by the law-enforcement officers who obtained the search warrant. For that reason, we affirm the trial court's judgment denying Lucas's motion to suppress.

**The Key Facts**

{¶2} In March 2024, detectives from the Guernsey County Sheriff's Office were investigating Lucas for suspected trafficking in methamphetamine. The detectives had

learned from confidential informants that Lucas was using room 416 at a Days Inn hotel in Cambridge, Ohio as her base for drug operations. Detective Adam Masinelli used a confidential informant to make a controlled purchase from Lucas and then observed security-camera footage showing Lucas enter room 416.

{¶3} Detective Masinelli prepared an affidavit in support of a request for a search warrant for room 416 at the hotel, and the search warrant was approved by a municipal-court judge. Law-enforcement officers then searched room 416 with the search warrant in hand, and various items related to narcotics trafficking — including paraphernalia, cash, marijuana, and methamphetamine — were recovered there.

{¶4} After Lucas was indicted on multiple felony drug charges, she sought an order barring the use at her trial of any evidence obtained during the search of the hotel room. After holding a hearing on Lucas's suppression motion, the trial judge denied her request. Lucas then pled no contest to several drug charges, and she was sentenced to a lengthy prison term. She now appeals the trial court's denial of her motion to suppress.

## We Assume Without Deciding That The Affidavit Was Defective

{¶5} Lucas does not claim that the search warrant in her case was issued without probable cause. Rather, Lucas focuses on what she alleges were fatal defects in the detective's search-warrant affidavit, including a claim that the detective was never placed under oath by the judge or by any other person, and an allegation that the affidavit included no language indicating that the person who certified the authenticity of the detective's signature was a person authorized to do such a thing.

{¶6} We acknowledge that the concerns raised by Lucas about the search-warrant affidavit are certainly not frivolous. Given that the U.S. Constitution's Fourth

Amendment — like that provision's counterpart in Article I, Section 14 of the Ohio Constitution — calls for any warrant to be "supported by oath or affirmation," any law-enforcement officer who seeks the issuance of a search warrant must take seriously his or her constitutional obligation to support such a request with the solemn promise of an oath or with the serious declaration of an affirmation.

{¶7} To be sure, the affidavit prepared by Detective Masinelli begins by stating that "[t]he undersigned law enforcement officer who, being duly sworn according to law, states that said law enforcement officer has good cause to believe and does believe" and then spells out the facts justifying the requested search of the Cambridge hotel room. And above the signature of the person who acknowledged or certified Masinelli's signature on the affidavit, these words appear: "Sworn to and subscribed by electronic signature pursuant to R.C. 1306.10 on Mar. 28, 2024." (R.C. 1306.10 provides that "[i]f a law requires a signature or record to be notarized, acknowledged, verified, or made under oath, the requirement is satisfied if the electronic signature of the person authorized to perform those acts, together with all other information required to be included by other applicable law, is attached to or logically associated with the signature or record.")

{¶8} Those dual claims by Masinelli and by the other signer about the affidavit having been the product of an oath-giving process seem to be undercut, though, by Masinelli's suppression-hearing testimony acknowledging that he never actually recited any sort of oath or affirmation in the presence of that other signer on the affidavit or before the municipal-court judge who issued the search warrant.

{¶9} Moreover, the entire "signing" process was done electronically, with no in-person contact between Masinelli and either the other signer on the affidavit or the judge.

And that other signer who certified or acknowledged Masinelli's signature may have been authorized to administer oaths, but nothing in the four corners of the affidavit indicates what the source of that authority may have been. And even if that person could administer oaths, could she properly do so without being in the presence of the oath giver, and does her written claim above her signature that the affidavit was "sworn" satisfy the Fourth Amendment's oath-or-affirmation requirement when no oath was in fact administered ?

{¶10} These are, in our view, legitimate questions, and Ohio law does not point us clearly in any one direction when we search for answers. *Compare State v. Wilmoth*, 22 Ohio St.3d 251, 266 (1986) (describing a search warrant as "defective" where the issuing magistrate "fail[ed] to use the proper words in administering the oath") *and* Crim.R. 41(C)(1) (though a search-warrant affidavit can be "communicated . . . by reliable electronic means," the affiant must nonetheless "be placed under oath" and must "swear to or affirm" the contents of the affidavit) *with State v. Jones*, 2012-Ohio-1301, ¶ 56-59 (7th Dist.) (if an affiant signs a written statement before an officer authorized to administer an oath, the oath requirement is complied with as effectively as if an oral oath was administered), citing *Cincinnati Fin. Co. v. First Discount Corp.*, 59 Ohio App. 131, 132–133 (1st Dist. 1938) *and In re Lewandowski*, 1986 WL 9211, *1 (7th Dist. Aug. 25, 1986) (affiant substantially complied with the governing juvenile rule when she signed a complaint in the presence of the clerk but did not take an oath or swear to the complaint).

{¶11} In the end, we need not determine whether the search warrant in this case was in fact supported by an oath or affirmation, because, as we explain below, the good-faith exception to the exclusionary rule provides, in our view, a sound basis on which we believe the trial court's judgment can and should be affirmed. That said, we trust that the

concerns raised by Lucas in this appeal will prompt the sheriff's office in Guernsey County to reexamine its search-warrant practices with an eye toward perhaps eliminating some of the alleged procedural shortcomings that Lucas has identified.

**Even if the Search-Warrant Affidavit Was Defective, the Good-Faith Exception to the Exclusionary Rule Justified the Trial Judge's Decision to Deny the Suppression Motion**

**{¶12}** Having assumed without deciding that the search-warrant affidavit in this case was defective, we readily conclude nonetheless that the good-faith exception supports the trial court's decision to allow the state to present at any trial in the case the evidence gathered under the authority of the search warrant.

**{¶13}** Typically, of course, evidence obtained by searches or seizures that violate the Fourth Amendment to the U.S. Constitution must be excluded. *Mapp v. Ohio*, 367 U.S. 643, 655 (1961). The exclusionary rule, however, should not be applied to bar the use in the prosecution's case in chief of evidence obtained by officers acting in reasonable reliance on a subsequently invalidated search warrant. *United States v. Leon*, 468 U.S. 897, 922 (1984). The exclusionary rule "is designed to deter police misconduct that flagrantly, deliberately, or recklessly violates the Fourth Amendment," *State v. Hoffman*, 2014-Ohio-4795, ¶ 46, while the good-faith exception to that rule recognizes that "when police act in an objectively reasonable manner in executing a search believed in good faith to be legal, there is no bad conduct to deter." *State v. Dibble*, 2020-Ohio-546, ¶ 16.

**{¶14}** The Supreme Court of Ohio has applied the good-faith exception in a case not unlike this one. In *State v. Wilmoth*, the Court considered what it described as "a search warrant issued on the basis of unsworn oral statements of police officers." *Wilmoth*, 22 Ohio St.3d at 254. Much like we have done today by accepting without

deciding that Detective Masinelli's affidavit was not accompanied by a proper oath, the Court in *Wilmoth* noted that "the magistrate's failure to properly administer the oath was arguably a violation of constitutional magnitude." *Id.* at 266. *See also id.* at 264 (explaining that the Court was "[a]ssuming, *arguendo,* that this failure of the magistrate was a constitutional violation").

{¶15} Invoking the good-faith exception, the Court in *Wilmoth* ruled that suppression of the evidence collected by police officers who relied on the constitutionally suspect search warrant was not justified. Given that "the officers seeking the warrant were under the impression that they took the proper oath," they were "justified in their good faith reliance on the validity of the search warrant." *Id.* at 266–267.

{¶16} Likewise in this case, Detective Masinelli testified at the suppression hearing that he reviewed the search warrant before executing it and saw nothing in it that caused him to doubt the document's validity. Elaborating on that point, Masinelli testified at the hearing that he believed, when he signed the affidavit, that he was "swearing or affirming certain things" based not only on the language at the beginning of the affidavit stating that he was "duly sworn according to law" but also the language above the other signer's signature stating that the affidavit had been "sworn to and subscribed by electronic signature." The detective explained, too, that he believed he was swearing or affirming that the information in the affidavit was true when he put his electronic signature on the document.

{¶17} Nothing in the affidavit or in the record before us causes us to doubt the truthfulness of the affidavit's contents or to doubt Masinelli's understanding of what the Supreme Court of Ohio has described as the "require[ment]" that police officers "be

truthful in search-warrant affidavits." *State v. Schubert*, 2022-Ohio-4604, ¶ 24. And of course Lucas does not suggest that the affidavit contained false information or that the judge who signed the search warrant was misled. Moreover, nothing in the record suggests that that judge failed to ensure that the affidavit spelled out sufficient probable cause, and Lucas does not allege that the affidavit or the search warrant failed to particularize the place to be searched or the items to be seized.

{¶18} In short, the detective and the issuing judge appear to have acted in objective good faith when they participated in the process that led to the collection of incriminating evidence from Lucas's hotel room. The search of that room was not marked by the kind of unlawful conduct that the exclusionary rule is designed to deter. *See United States v. Hammond*, 351 F.3d 765, 773–774 (6th Cir. 2003) (explaining that the good-faith exception to the exclusionary rule "does not apply" when "1) the supporting affidavit contained knowing or reckless falsity, 2) the issuing magistrate failed to act in a neutral and detached fashion and served merely as a rubber stamp for the police; 3) the supporting affidavit did not provide the magistrate with a substantial basis for determining the existence of probable cause; or 4) the officer's reliance on the warrant was neither in good faith nor objectively reasonable").

{¶19} Accordingly, the good-faith exception to the exclusionary rule applies to the evidence obtained during the execution of the search warrant. The trial court properly denied Lucas's motion to suppress, and we now affirm the judgment of the Court of Common Pleas of Guernsey County.

{¶20} Costs are to be paid by Appellant Jammie Lucas.

By: Gormley, J.;

Popham, J. concurs and

King, P.J. concurs separately.


*King, J. concurs separately,*

{¶21} I concur with Judge Gormley's conclusion that the good faith exception applies here. The affiant was never administered the oath and the jurat was executed asynchronously and by a person about whom the record is silent as to whether the state has empowered that person to properly administer an oath. In my view, the execution of the jurat was improper under R.C. 147.54.

{¶22} The requirement that the affiant swear under oath is a requirement of both the Federal and Ohio Constitutions. Here today, I assume that the appropriate course of action is to enforce that constitutional obligation and ensure that search warrant affidavits are usually held to the same formality as other affidavits. There might be reasons why the text, history, and tradition of those constitutional amendments lead us to view them differently, but approaching "oath" by its ordinary meaning suggests we at least begin the analysis of a proper jurat in the same place.

{¶23} Thus, I conclude that the affidavit was facially deficient and the record does not otherwise cure it. Because there is some precedent to suggest the oath made in a criminal complaint under Crim.R. 3 can be administered like it was here, I agree the good faith exception applies. *State v. Jones*, 2012-Ohio-1301, ¶ 58. Moreover, we have not been clear as to what extent R.C. 147.54 must be considered along with Crim.R. 41.

In a future case, this court or the Supreme Court might take that question up directly. But this case demonstrates the uncertainty that is unnecessarily created by not having a proper executed affidavit being presented to the judge for a warrant.