**UNITED STATES of America, Petitioner–Appellant,**

v.

**Gary Michael CICAN, Defendant–Appellee.**

**No. 01–2296.**

United States Court of Appeals, Sixth Circuit.

April 22, 2003.

Before MERRITT and DAUGHTREY, Circuit Judges; and RUSSELL,* District Judge.

RUSSELL, District Judge.

The United States appeals the district court's decision to exclude from evidence certain firearms found at the home of the Appellee. The United States claims that the district court incorrectly used an objective, rather than a subjective, standard when applying the test found in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). We conclude that the district court correctly applied the subjective standard and affirm its decision.

## I.

On August 24, 2000, the Inskter, Michigan, police department received a report of a bomb threat telephoned to a pay phone at Carron Industries. The police were told that a male caller had claimed a bomb would go off at 6:00 PM that day. No bomb was found that evening; the next day the case was assigned to Detective Anthony Delgreco for investigation.

Delgreco spoke with witnesses at Carron Industries who told him that the phone rang about 5:25 PM. Delgreco noted the location of the phone in the garage area and its number. He then drafted a subpoena to the telephone company for "Telephone Records Showing All Calls Received At Payphone Number 313–277–9378 Between the Hours of 5:20 PM and 5:30 PM on 8/24/00. And Where Those Originated."

On August 31, 2000, the telephone company replied to the subpoena by faxing a document to Delgreco. The cover sheet referenced the subpoena, but nothing in the document stated the time period covered by the report. The document itemized two calls received at the pay phone, one of which listed no originating number and lasted no time at all. The only other phone call, and the only one identifiable, came from 517–546–3865, an unpublished number subscribed by Rochelle Cican of Howell, Michigan, about forty miles from Inkster. The connection time for that phone call was 1:50 PM.

Delgreco learned that Rochelle Cican lived at that residence with the Appellee, and that the Appellee worked at Carron Industries. Delgreco then interviewed the Appellee, who stated that he had left work at about 3:30 PM on August 24 and arrived home at about 5:00 PM. The Appellee said that he spent the rest of the evening at home, alone, and that he had not made any phone calls from the residence that evening.

The next morning, September 1, 2002, Delgreco went presented an affidavit for a state warrant to search the Cicans' residence for evidence of the bomb threat. The affidavit stated, "According to Ameritech records, only one call came into that phone and it was from telephone number 517–548–3865." Delgreco presented the fax to the state prosecutor, who then ap-

* The Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, sitting by designation.

proved and signed the warrant application. A state district judge reviewed the affidavit and issued the warrant.

With officers from Inskter, Livingston County, the Michigan State Police bomb squad, and the Bureau of Alcohol, Tobacco & Firearms, Delgreco executed the warrant on September 1st. In the Cicans' home he found a suspected pipe bomb, 37 containers of gunpowder, a package of cannon wick (fuses), seven books on explosives, munitions and silencers, seven machine guns, five silencers, and dozens of more conventional firearms.

On February 21, 2001, a grand jury indicted the Appellee on 12 counts of possession of unregistered firearms (the machine guns and silencers) in violation of 26 U.S.C. § 5861(d). The defense challenged the indictment based on the alleged invalidity of the search warrant. It alleged that the search warrant affidavit had been a "kind of misrepresentation that is at best disingenuous and certainly reckless disregard for the actual facts" because it erroneously implied that the call made from the Cicans' residence to Carron Industries could have been the one relaying the alleged bomb threat.

The United States conceded that "with the benefit of hindsight, it is undisputed that the call from the Cicans' residence to the pay phone at Carron Industries was made about 1:50 PM and could not have been the call during which the bomb threat was made."[1] The United States also agreed that while the affidavit was literally true, it clearly implied the same erroneous assumption Delgreco had made—that the phone call reported by Ameritech had been made about the same time of the reported bomb threat. Finally, the United States conceded that without this errone-

ous assumption there was no basis for the search.

On July 16, 2001, the district court held an evidentiary hearing with Delgreco as the only witness. He testified that he had drafted the subpoena and deliberately requested information only for the period from 5:20 PM to 5:30 PM, that when he received the faxed response he noticed that only one identifiable call had been made to the payphone, and that he therefore immediately began investigating the source of that call. He testified that he did not notice that the fax referenced a connection time inconsistent with the subpoena.

During oral argument before the district court, the United States cited *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978)—and supporting circuit cases—for the proposition that in order to be "reckless" an officer must have acted with "an intention to mislead." During the hearing the district court repeatedly stated that it did not doubt Delgreco's testimony or his veracity.

On July 24, 2001, the district court granted the defendant's motion and ordered all the evidence suppressed. This order accepted the "subjective" standard and concluded:

[g]iven Detective Delgreco's ignoring of the readily-apparent reasons to doubt the veracity of his allegation that a call was made from defendant's telephone to the pay telephone at Carron Industries near the time of the alleged bomb threat, and the lack of any rational explanation for Detective Delgreco's inattentiveness, the Court infers that Detective Delgreco entertained serious doubts as to the veracity of his allegation and thus acted recklessly.

---

1. The record does not reveal whether the phone company failed to note the 5:25 PM phone call or if the report of the bomb threat was false.

The district court's order also stated, erroneously, that Delgreco had considered the faxed information for "roughly six days."

The government filed a timely motion for reconsideration, noting that Delgreco had signed the affidavit only the day after receiving the fax and asking the district court to consider its own oral comments about Delgreco's veracity. The government suggested that the district court had erroneously utilized an objective standard of "reckless" action rather than a "subjective" one. The district court denied this motion, conceding that it had erred in its "six days" statement but finding that this error was immaterial. The later order did not address the government's argument that the court either did not apply a subjective standard or applied it erroneously.

## II.

We review the lower court's conclusions of law *de novo* and its factual determinations for clear error. *United States v. Navarro–Camacho*, 186 F.3d 701, 705 (6th Cir.1999). The parties raise three issues: 1) the appropriate standard of recklessness; 2) the standard the district court applied; and, 3) the validity of that application.[2]

### A. Standards of Recklessness

In *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court reviewed the Delaware Supreme Court's ruling prohibiting any attack on the truthfulness of an affidavit supporting a search warrant. The Court concluded that there could not be an "absolute ban on post-search impeachment of veracity." *Id.* at 167. Nonetheless, the Court concluded that mere "negligence or

innocent mistake are insufficient." *Id.* at 171. It said, rather, that "[t]here must be allegations of deliberate falsehood or of reckless disregard for the truth." *Id.*

The Court, however, declined to provide a definition for "reckless disregard for the truth." Since that omission, most circuits have adopted a subjective test for recklessness similar to that used in First Amendment libel cases. In First Amendment libel, "reckless conduct is not measured by [a reasonably prudent man standard]. There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth [of the statements.]" *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968); *see also Beard v. City of Northglenn*, 24 F.3d 110 (10th Cir.1994); *United States v. Williams*, 737 F.2d 594 (7th Cir.1984).

The Appellee asks us to adopt an objective standard of recklessness based on tort law. We have previously declined to do so, albeit in unpublished decisions. *See, e.g., United States v. Palmer*, No. 99–57435, 2001 WL 1216999, 27 Fed.Appx. 343 (6th Cir. Oct. 2, 2001); *Liptak v. City of Niles*, No. 98–4078, 1999 WL 1045100 (6th Cir. Nov. 10, 1999). The only persuasive authority the Appellee cites is the Eighth Circuit's caution about employing the terms "subjective" and "objective;" however, even that Circuit has stated that "[i]n determining whether statements were made with a 'reckless disregard for the truth,' we have applied the standard used in First Amendment cases." *United States v. Johnson*, 78 F.3d 1258, 1262 (8th Cir.1996) (citing *United States v. Clapp*, 46 F.3d 795, 801 (8th Cir.1995)). The Eighth Circuit explained the standard as follows: "whether the affiant in fact entertained serious doubts as to the truth of the affida-

---

2. The Appellee asks us to adopt a bright line test requiring the police to attach documentary evidence to the affidavits it supports. We decline to do so.

vits or had obvious reasons to doubt the accuracy of the information contained therein." *Id.* (citations and quotations omitted).

The Appellee presents many additional arguments for the desirability of an "objective" standard rather than a "subjective one," and notes that we have never spoken conclusively on the issue. The clear weight of authority presses against his view, however, and given the posture of this case it is an inopportune time to announce a new interpretation of *Franks.*

## B. The District Court's Application

The district court explained its analytical test:

A policeman displays reckless disregard for the truth when he subjectively "entertains serious doubts as to the truth of his allegations." *United States v. Whitley,* 249 F.3d 614, 621 (7th Cir. 2001) (citation omitted); *Griffin v. City of Detroit,* No. 92–2062, 1993 WL 239069, at *4 (6th Cir. June 30, 1993). This Court may infer such recklessness "from circumstances evincing obvious reasons to doubt the veracity of the allegations." *Whitley,* 249 F.3d at 621; *accord Liptak v. City of Niles,* No. 98–4078, 1999 WL 1045100, at *4 (6th Cir. Nov. 10, 1999); *United States v. Tomblin,* 46 F.3d 1369, 1376 (5th Cir.1995) (Garza, J.).

This language clearly reflects the "subjective" view of recklessness discussed previously.

Nevertheless, the United States maintains that the district court did not apply this test. It argues that the district court only nominally accepted the subjective standard, but in actuality applied an objective test. In support of this contention, the United States points to language from the hearing transcript where the district court states that it does not believe that "the detective committed a deliberate falsehood." It contends that if the district court believed that Delgreco did not deliberately mislead the magistrate, and still suppressed the evidence, it must have acted on some tort-based "objective" recklessness standard.

The record is not as clear as the United States argues. The district court began noting that it did not believe Delgreco had committed a "deliberate falsehood." Nevertheless, the court refused—despite prodding from the United States—to describe Delgreco as having acted in good faith. And the district court's opinion rested clearly on a finding of subjective recklessness: "the Court infers that Detective Delgreco entertained serious doubts as to the veracity of his allegation and thus acted recklessly."

Ultimately, the United States seeks, incorrectly, to disguise a complaint about the district court's conclusions of fact as a question of law about the standard it applied. The United States's real complaint is with the district court's finding that Delgreco was subjectively reckless.

## C. The District Court's Conclusion

The district court's finding that Delgreco was subjectively reckless is reviewed under the "clear error" standard. *United States v. Navarro–Camacho,* 186 F.3d 701, 705 (6th Cir.1999). A factual finding will only be clearly erroneous when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. *United States v. Ayen,* 997 F.2d 1150, 1152 (6th Cir.1993). The evidence is reviewed "in the light most likely to support the district court's decision." *United States v. Braggs,* 23 F.3d 1047, 1049 (6th Cir.1994).

In almost all cases, subjective recklessness must be proven circumstantially. *United States v. Williams,* 737 F.2d 594, 602 (7th Cir.1984). As the district court noted, "[a] fact finder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations." *See also United States v. Markey,* 131 F.Supp.2d 316, 324 (D.Conn. 2001).

Here, the circumstance that weighed most heavily on the district court was the lack of any rational or reasonable explanation for Delgreco's error other than his willful ignorance. As the district court's opinion noted, "[t]he Government states that Detective Delgreco 'almost inexplicably erred . . .' and the Court agrees with that observation except for the qualifying word 'almost.' "

The United States's central objection to the district court's conclusion is based on that court's comments during the *Franks* hearing that it did not believe that Delgreco had deliberately misled the magistrate. The United States's argument ignores the distinction between deliberate falsehood and subjective recklessness. While both focus on the intention of the affiant, *Beard v. City of Northglenn,* 24 F.3d 110, 116 (10th Cir.1994), the latter only requires that the affiant "in fact entertained serious doubts as to the truth of his allegations," *id.* (quotation omitted), not a finding that he deliberately lied.

The United States has not met its burden in showing that the entire evidence demonstrates the erroneousness of the district court's decision. The district court's determination of fact, and of credibility, are given wide latitude, and should not be disturbed here. *See Barnett v. Department of Veterans Affairs,* 153 F.3d 338, 342 (6th Cir.1998) ("[h]aving had the benefit of a bench trial in which both sides presented witness testimony and other evidence, the fact-finding and credibility assessments of the trial court are entitled to substantial deference.").

For the foregoing reasons, the judgment of the district court is AFFIRMED.