RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 24a0042p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

     *Plaintiff-Appellee*,

 *v.*

CHARLES BRIAN O'NEILL,

     *Defendant-Appellant*.

No. 22-3793

Appeal from the United States District Court for the Northern District of Ohio at Toledo.
No. 3:18-cr-00178-1—James R. Knepp II, District Judge.

Argued:  October 19, 2023

Decided and Filed:  February 29, 2024

Before:  SUTTON, Chief Judge; CLAY and LARSEN, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  David Klucas, Toledo, Ohio, for Appellant.  Frank H. Spryszak, UNITED STATES ATTORNEY'S OFFICE, Toledo, Ohio, for Appellee.  **ON BRIEF:**  David Klucas, Toledo, Ohio, for Appellant.  Tracey Ballard Tangeman, UNITED STATES ATTORNEY'S OFFICE, Toledo, Ohio, for Appellee.

LARSEN, J., delivered the opinion of the court in which SUTTON, C.J., joined.  CLAY, J. (pp. 15–24), delivered a separate dissenting opinion.

───────────────

## OPINION

───────────────

LARSEN, Circuit Judge.  Charles O'Neill was charged with sexually exploiting a minor and receiving or distributing child pornography.  He pleaded guilty to both charges but reserved

the right to appeal the district court's denial of his motion to suppress. For the following reasons, we AFFIRM the judgment of the district court.

I.

A.

In February 2018, Charles O'Neill's wife and son notified the Fostoria Police Department that they had each recently observed large numbers of photographs of nude and partially nude minor boys on O'Neill's phone and iPad. O'Neill's son reported to police that he first noticed photos of nude boys between five and fourteen years of age while O'Neill's phone was lying on a counter charging. He "looked further into the phone" and saw more photos of "young boys in varying states of nudity" in an album of saved photographs. R. 12-1, PageID 34. He stated that on a separate occasion, he looked through O'Neill's iPad and observed photographs of nude boys ranging in age from under five to seventeen. O'Neill's wife stated that her son informed her that he had "observed obscene photographs of young male children on his father's cellular phone." *Id.* O'Neill's wife then looked through O'Neill's phone herself and found two albums, one containing "over one thousand images" of young boys ranging in age from two to ten in varying states of nudity. *Id.*

After receiving the complaint from O'Neill's wife and son, Fostoria Police Officer Cory Brian sought a warrant to search O'Neill's home in Fostoria, Ohio, and to seize computers, phones, notebooks, and other items that could contain evidence of state crimes involving sexually explicit depictions of minors. Officer Brian provided an affidavit in support of the warrant in which he stated that "a report was received . . . about a citizen possessing pornographic material involving a minor." *Id.* at 33. He recounted the substance of the complaint as described above, and he detailed his "knowledge, experience, and training in child exploitation and child pornography investigations," describing "certain characteristics common to individuals involved in the receipt and collection of child pornography." *Id.* at 34–35. Based on collectors' "tend[ency] to maintain their collections at a secure, private location for long periods of time, and based on the fact that [O'Neill] had child pornography available on a [peer-to-peer] network," Officer Brian stated that "there is probable cause to believe that evidence of

the offenses of distributing, receiving and possessing child pornography is currently located" at O'Neill's home in Fostoria, Ohio. *Id.* at 36. Based on this affidavit, a municipal court judge issued a warrant directing the police to search O'Neill's residence and to seize computers, phones, notebooks, or other items believed to be evidence of violations of ORC § 2907.321 (pandering obscenity involving a minor), ORC § 2907.322 (pandering sexually oriented material involving a minor), or ORC § 2907.323 (illegal use of a minor in nudity-oriented material or performance).

Because the police were aware that O'Neill often carried firearms, two officers traveled to O'Neill's home to detain him prior to the warrant's execution. After Officer Brian arrived and began to search the house, the detaining officers removed a cell phone that was visible in O'Neill's front shirt pocket. Forensic technicians reviewed the phone and identified what they believed to be child pornography and child erotica. Officer Brian then placed O'Neill under arrest on state pandering charges and transported him to a police facility for questioning. An iPad retrieved from the house was also sent for forensic analysis, and the investigating agent identified 7,791 images, "[m]ost" of which "appear[ed] to be of partially clothed prepubescent males," including "multiple images of child pornography, mostly of prepubescent males, with the focus of the image on the child's genitals." R. 15-1, PageID 62.

The day after the search of the house, O'Neill's son, on his own initiative and accompanied by his aunt and a friend, traveled to a barn owned by O'Neill, seeking to secure weapons they believed O'Neill stored there. They entered a room in the barn that O'Neill kept off limits to anyone else and found "a computer tower with monitor, computer discs, blank and used discs, vibrators and other sex toys, condoms, and children's clothing and 'costumes,'" along with "approximately fifteen firearms." R. 68-1, PageID 502. O'Neill's wife and son notified the Fostoria Police Department of the items found in the barn.

Because the barn was in Wood County, outside the jurisdiction of Fostoria police, officers contacted the Wood County Sheriff's Office to brief them on the situation. Sergeant Ginnie Barta of the Wood County Sheriff's Office obtained a search warrant for the barn. Her affidavit in support of the warrant reproduced much of the language in Officer Brian's earlier affidavit but also added information from O'Neill's son about his discoveries of computer

equipment and discs along with children's clothing and costumes, sex toys, condoms, and guns in a private room at the barn. The next day, officers executed the search warrant on the barn. They seized a computer, camcorder, camera, digital storage devices, miscellaneous clothing, and a vibrator. They also observed several firearms, sexual paraphernalia, latex gloves, lubricant, "'Speedo' type underwear," "satin type one-piece outfits," "men's white brief style underwear," fecal-stained sweatpants, and four vials of Promethazine, an antihistamine that can also be used for sedation. R. 68-3, PageID 524; R. 157, PageID 1367. Forensic analysis of the electronics and digital evidence revealed videos and images of child pornography and child erotica, including depictions of young boys masturbating and performing oral sex.

Subsequent forensic examination of a DVD found in the barn revealed multiple child pornography videos produced by O'Neill. In one of these videos, O'Neill is seen fondling an eleven-to-thirteen-year-old boy's genitals and performing oral sex on him. The victim, J.M., was later identified and told law enforcement officers that O'Neill had abused him over a period of roughly six years, including by attempting anal sex with him, requiring him to perform oral sex on O'Neill, and taking sexually explicit photos of him naked. J.M. stated that O'Neill would download depictions of his abuse to a computer and display the images on the screen.

B.

A federal grand jury indicted O'Neill for sexually exploiting a minor in violation of 18 U.S.C. § 2251(a) based on his abuse of J.M., and for receiving or distributing child pornography in violation of 18 U.S.C. § 2252(a)(2) based on the hundreds of child pornography images found on his electronics and digital storage devices.

After his indictment, O'Neill filed several motions to suppress. Two are relevant here. His October 2019 motion requested a *Franks* hearing to evaluate allegedly false statements in Officer Brian's affidavit supporting the first search warrant. *See Franks v. Delaware*, 438 U.S. 154, 155–156 (1978). The motion also asked the court to suppress evidence found at his home on the ground that the affidavit failed to establish probable cause. His February 2020 motion made the same requests in relation to Sergeant Barta's affidavit, which was used to support the warrant to search the barn in Wood County.

The district court denied both motions for identical reasons. On the *Franks* issue, the court found that the Brian and Barta affidavits contained false statements. But the court determined that the officers had not knowingly or recklessly misled the issuing magistrate. As to the existence of probable cause to support the warrants, the district court concluded that probable cause was lacking. The court reasoned that, under the Supreme Court's decision in *New York v. Ferber*, 458 U.S. 747, 764–65 (1982), "nude, or partially nude photos, even of children," are not, without more, "pornography." R. 78, Order, PageID 559; *see also Osborne v. Ohio*, 495 U.S. 103, 114 n.11 (1990). The court stated that "nothing in the affidavit[s] indicate[d] that any of [O'Neill's] . . . images depict[ed] lewd or lascivious exhibitions or [a] graphic focus[] on the boys' genitals," which would meet the Court's definition of child pornography. R. 78, Order, PageID 560. And the conclusory assertion at the beginning of Officer Brian's affidavit that police had received a report "about a citizen possessing pornographic material involving a minor" did not create probable cause to believe "that what [O'Neill] possesse[d] [wa]s child pornography." *Id.*; R. 12-1, PageID 33. The district court's consideration of the Barta affidavit did not mention its discussion of the computer equipment and discs, children's clothing and costumes, sex toys, condoms, and guns O'Neill's son had found in a private room at the barn.

Although the district court determined that the warrants were not supported by probable cause, the court concluded that the good-faith exception articulated in *United States v. Leon*, 468 U.S. 897 (1984), justified the officers' objectively reasonable reliance on the warrants' "apparent validity." R. 78, Order, PageID 562. Accordingly, the court declined to suppress the evidence found in the house and the barn.

With his motions denied, O'Neill conditionally pleaded guilty to the § 2251(a) and § 2252(a)(2) offenses. The district court sentenced him to 192 months' imprisonment on each count, to run concurrently. O'Neill timely appealed.

## II.

Before turning to the merits, we consider what issues O'Neill preserved for appeal through his conditional guilty pleas. Both plea agreements contain identical language reserving O'Neill's "right to appeal" the district court's denial of his February 2020 "motion to suppress

(doc. 63), which ruling (doc. 79) incorporates by reference certain findings and orders set forth in other rulings made in this case which Defendant intends to appeal to the extent said rulings were relied upon in the ruling denying the aforementioned motion to suppress." R. 138, PageID 1111–12; R. 150, PageID 1188. The cited documents refer to the motion to suppress evidence obtained from the barn and to the district court's denial of that motion, respectively. Neither plea agreement contains a provision reserving O'Neill's right to appeal the denial of the October 2019 motion to suppress evidence found in the house.

Rule 11(a)(2) of the Federal Rules of Criminal Procedure sets out the procedures for entering a conditional guilty plea. The rule states that, with consent of the government and the court, a defendant may "enter a conditional plea of guilty or nolo contendere, reserving in writing the right to have an appellate court review an adverse determination of a *specified pretrial motion*." Fed. R. Crim. P. 11(a)(2) (emphasis added). As we have recognized, a conditional guilty plea "represent[s] an exception to the general rule that a guilty plea waives all non-jurisdictional defects in the pre-plea proceedings." *United States v. Herrera*, 265 F.3d 349, 351 (6th Cir. 2001) (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973)). If Rule 11(a)(2)'s requirements are not satisfied, the normal rules concerning the effects of a guilty plea apply: "a guilty plea represents a break in the chain of events" and extinguishes the defendant's right to "raise independent claims" relating to events "that occurred prior to the entry of the guilty plea." *Tollett*, 411 U.S. at 267.

O'Neill did not reserve the right to appeal the district court's ruling denying his motion to suppress the evidence found in the house. Although the reservation-of-rights provisions in his plea agreements refer to "other rulings" apart from the barn ruling, those provisions explicitly reserved the right to appeal any such "findings and orders" only "to the extent" they "were relied upon in the ruling denying" the motion to suppress the evidence found in the barn. R. 138, PageID 1111–12; R. 150, PageID 1188. Accordingly, O'Neill may contest the reasoning contained in the order denying his motion to suppress evidence found in the house only to the extent that it was incorporated into and relied upon in the barn ruling. *See United States v. Ormsby*, 252 F.3d 844, 848 (6th Cir. 2001) (defendant's conditional guilty plea waived right to

appeal any issues not specifically identified in the plea); *United States v. Napier*, 233 F.3d 394, 399 (6th Cir. 2000) (same).

## III.

The Fourth Amendment requires warrants to be supported by probable cause. To enforce this requirement, "the Supreme Court created the exclusionary rule." *United States v. Moorehead*, 912 F.3d 963, 967 (6th Cir. 2019). The Court has made clear that the "sole purpose" of this rule "is to deter future Fourth Amendment violations." *Davis v. United States*, 564 U.S. 229, 236–37 (2011). And because exclusion "exacts a heavy toll on both the judicial system and society at large," it is only appropriate where "the deterrence benefits of suppression . . . outweigh its heavy costs." *Id.* at 237; *see also Utah v. Strieff*, 579 U.S. 232, 237–38 (2016) ("Suppression of evidence . . . has always been our last resort, not our first impulse." (alteration in original) (citation omitted)). Thus, even when a warrant is later found to be invalid for want of probable cause, the fruits of the search will not be suppressed unless the executing officers' reliance on the warrant was not objectively reasonable. *Moorehead*, 912 F.3d at 967. The Supreme Court recognized this "good faith" exception to the exclusionary rule in *United States v. Leon*, 468 U.S. 897, 920 (1984) (explaining that there is normally no deterrent effect "when an officer acting with objective good faith has obtained a search warrant from a judge or magistrate and acted within its scope").

The district court's application of the good-faith exception presents a legal question, which we review de novo. *United States v. McCoy*, 905 F.3d 409, 415 (6th Cir. 2018). But we defer to the district court's findings of fact unless they are clearly erroneous. *Id.*

Reliance on "'a warrant issued by a magistrate normally suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'" *Leon*, 468 U.S. at 922 (quoting *United States v. Ross*, 456 U.S. 798, 823 n.32 (1982)). That is "because any error in deciding whether probable cause exists for the search warrant belongs primarily to the *magistrate* issuing the warrant, not the *officer* seeking it." *United States v. Baker*, 976 F.3d 636, 647 (6th Cir. 2020) (citing *Davis*, 564 U.S. at 239). "And the 'officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the

warrant is technically sufficient.'" *Id*. (quoting *Leon*, 468 U.S. at 921). So evidence obtained in reliance on a warrant ordinarily will not be suppressed.

There are four exceptions, however. Exclusion remains appropriate where: (1) the issuing magistrate was deliberately or recklessly misled by an affiant; (2) the issuing magistrate "wholly abandoned" the judicial role; (3) the affidavit was "bare bones," or "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant was "so facially deficient" that the officers could not "reasonably presume it to be valid." *Leon*, 468 U.S. at 923; *see also United States v. Hines*, 885 F.3d 919, 926–27 (6th Cir. 2018). O'Neill contends that all but the second exception applies here, but we agree with the district court that none applies.

With respect to the first circumstance, O'Neill contends that Sergeant Barta knowingly or recklessly misled the issuing magistrate by stating in her affidavit that O'Neill had access to a peer-to-peer network of child pornography. Officer Brian included this statement in his affidavit, though it was unsupported by the complaint he had received, and Sergeant Barta subsequently incorporated it into her own affidavit. But the district court accepted the officers' explanations for this error.[1] The court found that Officer Brian had copied and pasted this material from a template affidavit and mistakenly forgot to delete it. And the court noted that it had viewed the earlier warrant that Officer Brian had used as a template. When Sergeant Barta composed her affidavit, the court concluded, she largely "piggyback[ed]" on the Brian affidavit. R. 79, Order, PageID 566–67. She stated that, in the course of "cutting and pasting" from the Brian affidavit, "she inadvertently failed to delete" the phrase, and she emphasized that she did not "deliberately" leave it in "to bolster probable cause." R. 68-2, PageID 515. The district court did not clearly err in crediting this account and finding that neither Officer Brian nor Sergeant Barta had knowingly or recklessly included the reference to the peer-to-peer network in their affidavits. *See United States v. Colquitt*, 604 F. App'x 424, 430 (6th Cir. 2015). Indeed,

---

[1]Officer Brian's affidavit also mistakenly stated that O'Neill had prior convictions for insurance fraud and theft. In fact, O'Neill had only been charged with those crimes. This mistake was not repeated in the Barta affidavit, which led to the search of the barn, and O'Neill makes no argument about this issue on appeal. In any event, the district court accepted Officer Brian's explanation that this mistake was inadvertent, and the court also considered it to be immaterial.

based on the location of this material within the affidavits (in boilerplate sections that appear to be copied from templates), and with no evidence to contradict the officers' declarations, this was an entirely plausible factual finding. On the facts as found by the district court, Sergeant Barta's error represents no more than an incident of "'isolated' negligence," *United States v. Kinison*, 710 F.3d 678, 685 (6th Cir. 2013), not the "knowing . . . falsity" or "reckless disregard for the truth" that the exclusionary rule is designed to deter, *United States v. Hammond*, 351 F.3d 765, 773–74 (6th Cir. 2003); *see also id.* at 774 (distinguishing "the remarkable inaccuracies" in the affidavit at issue, which "reflect[ed], at the very least, a reckless disregard for the truth," from "case[s] in which an officer made a small error in the affidavit").

Our dissenting colleague concludes that Sergeant Barta's error was reckless because she "copie[d] and paste[d] from another document" without "ensur[ing] that the copied information applie[d] to the present case." Dissenting Op. at 20. But, as the dissent acknowledges, Sergeant Barta did take steps to ensure that the copied information applied to her request for a warrant for the barn—she "simply fail[ed] to catch" the error "while proofreading." *Id.* at 21. And the law does not deem an officer reckless whenever she includes inaccurate information in her affidavit, even despite having made efforts to ensure her affidavit's accuracy.

The recklessness standard—which we have taken from First Amendment libel law—asks whether the affiant "in fact entertained serious doubts as to the truth of the affidavits or had obvious reasons to doubt the accuracy of the information contained therein." *United States v. Cican*, 63 F. App'x 832, 835–36 (6th Cir. 2003) (quoting *United States v. Johnson*, 78 F.3d 1258, 1262 (8th Cir. 1996)); *see also United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019); *United States v. Williams*, 737 F.2d 594, 602 (7th Cir. 1984). This standard goes to the officer's "knowledge or state of mind at the time the officer wrote the allegedly false affidavit." *Butler v. City of Detroit*, 936 F.3d 410, 420 (6th Cir. 2019). But the dissent does not provide a sound reason to conclude that Sergeant Barta consciously harbored doubts about the accuracy of her affidavit. Indeed, as the dissent points out, it is clear that Sergeant Barta proofread the copied sections of her affidavit: she changed the address of the search location at two places in the affidavit within a few lines of the peer-to-peer network allegation. *See* Dissenting Op. at 21. In other words, the dissent recognizes that Sergeant Barta took steps to ensure the accuracy of

the information she copied and pasted from Officer Brian's affidavit.  Of course, it turns out that her efforts were imperfect, and she failed to delete the peer-to-peer network allegation.  But the dissent's only factual basis for labeling the district court's finding of negligence clearly erroneous is precisely the fact that she *did* take care to check her work.  This is far from evidence of "a culpable mental state."  *Butler*, 936 F.3d at 421.  In effect, the dissent's rule would impose strict liability for inaccuracies in an affidavit:  even an officer's reasonable care in checking the accuracy of her affidavit would not save the affidavit from being deemed reckless and thus beyond the scope of the good-faith exception.

We have recognized mistakes similar to Sergeant Barta's as negligent in the past.  In *Colquitt*, the affidavit described five controlled buys by a confidential informant.  604 F. App'x at 426.  The affiant officer completely misdescribed one of these buys after copying a description from an earlier portion of the affidavit and pasting it in the wrong place.  *Id.* at 427–28.  As a result, the affidavit described the events in a manner that was false and that the officer would have known to be false had she caught the error.  But we declined to disturb the district court's finding that the officer's mistake was the result of negligence and not recklessness.  *Id.* at 429–30.  Similarly, the affidavit in *Butler* made a false (indeed, factually impossible) assertion:  the affiant officer stated that he observed events at a "target location" while parked at an address eight miles away.  936 F.3d at 415, 421.  This was obviously an inaccurate statement, but we concluded that there had been "no showing" that the officer made it recklessly.  *Id.* at 421.  Rather, the officer testified that he had accidentally mis-defined the "target location" in his affidavit; the "target location" should have been defined as an address on the same street as where he was parked during his observations.  *Id.* at 421–22.  He had simply confused three addresses when he composed the affidavit because they were all involved in the same investigation, and we declined to "infer a culpable state of mind" of recklessness from this error.  *Id.* at 422.  And in *United States v. Thomas*, we affirmed the district court's denial of a suppression motion despite the fact that the affidavit misstated the defendant's criminal history.  852 F. App'x 189, 195, 199 (6th Cir. 2021).  The affidavit stated that he had been arrested for possession of cocaine, but the prior arrest was actually for possession of marijuana.  *Id.* at 194.  We concluded that there was no evidence that this "typographical error" was "anything other than a negligent error."  *Id.* at 193–94.  *See also United States v. Brown*, 732 F.3d 569, 575

(6th Cir. 2013) (observing that an affiant's admission that he "typed [the affidavit] up wrong"—to include an allegedly false statement about a person's presence—"merely show[ed] that [the affiant] was negligent"); *United States v. Thomas*, 263 F.3d 805, 807–09 (8th Cir. 2001) (due to a typographical error, the warrant identified the place to be searched using the defendant's previous address, but the good-faith exception applied); *United States v. Howard*, 2023 WL 2966032, at *2 (9th Cir. Apr. 17, 2023) (conclusory allegations that "typographical errors were deliberate or reckless" were insufficient to obtain a *Franks* hearing).

O'Neill next argues that the affidavit was "bare bones," or so lacking in indicia of probable cause that an officer could not reasonably have believed that probable cause existed. On this point, the question is "whether the affidavit was so skimpy, so conclusory, that anyone looking at the warrant would necessarily have known it failed to demonstrate probable cause." *United States v. Asgari*, 918 F.3d 509, 513 (6th Cir. 2019). A bare-bones affidavit "merely 'states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'" *United States v. Christian*, 925 F.3d 305, 312 (6th Cir. 2019) (en banc) (quoting *United States v. Washington*, 380 F.3d 236, 241 n.4 (6th Cir. 2004)). We will not label an affidavit "bare bones" unless it is "woefully deficient." *Id.* The "designation ought to be reserved" for affidavits that are "short, conclusory, and self-serving." *Id.* at 313.

Sergeant Barta's affidavit was not bare bones. It contained more than conclusory claims of criminal conduct and was far from devoid of factual support. *See Baker*, 976 F.3d at 647 (explaining that "a search warrant is not bare bones . . . if it contains 'some modicum of evidence'" connecting the place to be searched with the criminal activity at issue (citation and internal quotation marks omitted)). Contrary to O'Neill's assertion, the affidavit did not "aver[] *only* nudity." Appellant's Br. at 22 (emphasis added). To begin, it described an immense collection of images, saved in dedicated albums, that contained uniform subject matter—nude or partially nude young boys. O'Neill's son described these pictures as "obscene." R. 68-1, PageID 502. O'Neill's wife and son were sufficiently alarmed by this collection that they promptly notified authorities, giving rise to the inference that these were not innocent family pictures. *Cf. Osborne*, 495 U.S. at 112 n.9 (noting that a parent's sharing of a photo of an

unclothed infant with a family friend is constitutionally protected conduct); *Mikesell v. Conley*, 51 F. App'x 496, 502–03 (6th Cir. 2002) ("[T]he First Amendment protects nudity that involves no exploitation of children—as, for example, where a parent innocuously photographs his or her naked infant . . . ."). And as the district court found, the affidavit established that O'Neill "was undoubtedly a 'collector'" of an immense trove of images. R. 78, Order, PageID 559. This characteristic would have suggested to an officer that O'Neill fit the mold of a child pornography offender, which the affidavit described in some detail. *Cf. United States v. Clark*, 668 F.3d 934, 939 (7th Cir. 2012) ("Boilerplate language about the tendencies of child pornography collectors supports probable cause for a search when the affidavit also includes facts that suggest that the target of the search 'has the characteristics of a prototypical child pornography collector.'" (quoting *United States v. Prideaux-Wentz*, 543 F.3d 954, 960 (7th Cir. 2008))).

Moreover, although the district court did not discuss these facts, Sergeant Barta's affidavit also described what O'Neill's son found in a private room in his father's barn: "a computer tower with monitor, computer discs, blank and used discs, vibrators and other sex toys, condoms, and children's clothing and 'costumes,'" as well as "approximately fifteen firearms." R. 68-1, PageID 502. Because the district court did not consider the significance of these items, we cannot know how these facts, combined with the cache of photos of naked children found on O'Neill's phone, might have affected its probable-cause analysis. But there is no doubt that Sergeant Barta's affidavit contained enough factual material to support a good-faith belief that probable cause existed. *See United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017) ("An affidavit cannot be labeled 'bare bones' simply because it lacks the requisite facts and inferences to sustain the magistrate's probable-cause finding . . . ."); *id.* at 500 ("[R]easonable inferences that are not sufficient to sustain probable cause . . . may suffice to save the ensuing search as objectively reasonable."). The affidavit was not bare bones.

Finally, O'Neill claims throughout his brief that the warrant was facially deficient, but he makes no independent argument on this point. Rather, this seems to be a variation of his claim that the warrant lacked any indicia of probable cause. In any event, the warrant was not facially deficient: it described the suspected crimes, "the place to be searched," and "the things to be seized." *Leon*, 468 U.S. at 923.

In sum, the district court correctly applied the good-faith exception and properly denied O'Neill's motion to suppress. The officers' reliance on the warrant to search O'Neill's barn was objectively reasonable, and suppression of the fruits of the search would not serve the purposes of the exclusionary rule.

IV.

Because we conclude that the officers relied on the warrant in good faith, we need not decide whether the warrant was supported by probable cause. In light of the dissent's characterization of the factual record, however, we offer some clarifying observations on the matter. Contrary to the dissent's claims, Sergeant Barta's misstatement about the peer-to-peer network was not "the only non-conclusory statement linking O'Neill to 'child pornography' in the entire affidavit." Dissenting Op. at 19. Rather, as we have already explained, Sergeant Barta's affidavit recounted credible reports not only that O'Neill possessed over one thousand digital images of nude or partially nude minor boys but also that O'Neill maintained a private room in his barn, in which his son found computer equipment and discs along with sex toys, children's costumes and clothing, condoms, and firearms.

In the face of these facts, we would be hard-pressed to say that probable cause did not support the search of the barn. Recall that a finding of probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *District of Columbia v. Wesby*, 583 U.S. 48, 57 (2018) (quoting *Illinois v. Gates*, 462 U.S. 213, 243–44 n.13 (1983)). "In determining probability, officers and magistrates may rely on 'common-sense conclusions about human behavior.'" *United States v. Tagg*, 886 F.3d 579, 585 (6th Cir. 2018) (citation omitted).

Whatever the significance of any of O'Neill's secret items or images in isolation, when "considered *together*," as they must be, *id.* at 586, they would likely establish a "substantial basis for concluding that a search would uncover evidence of wrongdoing," *Gates*, 462 U.S. at 236 (cleaned up). O'Neill's possession of a large cache of digital photos of naked boys, combined with his secret store of children's costumes, condoms, vibrators, and sex toys, could support the strong inference that O'Neill had a sexual interest in children and that he either had acted or

planned to act on that interest. *See, e.g.*, *Clark*, 668 F.3d at 939 (a "demonstrable sexual interest in children" is relevant to probable cause). These physical items were found in the same private room in the barn that also contained a computer, a monitor, and blank and used computer discs. One could therefore draw the common-sense inference that there was "a fair probability that contraband or evidence of a crime" would be found in the barn and, in particular, on the computer equipment and discs stored in the private room. *Gates*, 462 U.S. at 238.

Thus, even if we shared the dissent's view of Sergeant Barta's state of mind, we likely would conclude that the district court's denial of the suppression motion was proper. Under the framework outlined in *Franks*, a court must excise a recklessly or deliberately false statement and determine whether the officer's affidavit would establish probable cause without it. *See Franks*, 438 U.S. at 171–72. Here, that conclusion seems easy, even setting aside the allegation about a peer-to-peer network. But because the district court rightly concluded that the good-faith exception applies, we can rest our holding there.

\* \* \*

We AFFIRM the judgment of the district court.

---

**DISSENT**

---

CLAY, Circuit Judge, dissenting. The search warrant at issue contained a false statement linking O'Neill to child pornography, and, on appeal, the government does not contend that any other statements in the affidavit provided probable cause for a search warrant. The majority nevertheless affirms the district court's clearly erroneous factual findings and concludes that the inclusion of this false statement—the only non-conclusory statement linking O'Neill to child pornography in the affidavit—was mere negligence because it was copied from another unrelated-case affidavit. But the majority does not explain why using another affidavit as a template excuses the officers from proofreading and excising false information before it is submitted to a magistrate. To the contrary, this represents precisely the type of reckless disregard for the truth that the Fourth Amendment prohibits. Because this recklessly false statement was the only factual representation of child pornography possession in the affidavit, the warrant was deficient and cannot be saved by the good-faith exception. Because I would reverse the denial of O'Neill's motion to suppress, I respectfully dissent.

## I. BACKGROUND

The problems with the majority's approach are best understood by a review of the circumstances surrounding the issuance of the two relevant warrants in this case. O'Neill's wife and son reported to the Fostoria Police Department that they had viewed photos of nude young men on O'Neill's phone. After receiving this report, Officer Cory Brian prepared an affidavit to accompany a search warrant for O'Neill's home based on the belief that the information provided probable cause that O'Neill violated Ohio's child pornography laws. The affidavit recounted statements made by O'Neill's wife and son that they had seen photos of nude young boys on O'Neill's phone, and included boilerplate information describing how child pornographers tend to collect child pornography. Amidst this boilerplate language, the affidavit inaccurately stated that "based on the fact that the user had child pornography available on a P2P network," meaning a peer-to-peer network, "there is probable cause to believe that evidence of

the offenses" was available at O'Neill's home.  First Search Warrant, R. 12-1, Page ID #36.  This statement, as Officer Brian later explained in a declaration under the penalty of perjury, was false, as the police had no information that O'Neill used a peer-to-peer network for child pornography.  Officer Brian claimed that he had included the sentence "inadvertently" because he had copied and pasted the information from a template warrant and failed to change it before submitting the warrant to a judge.  Brian Decl., R. 47-1, Page ID #375–76.

After officers searched O'Neill's home pursuant to this signed warrant, O'Neill's wife reported to the Fostoria Police Department that her son had discovered a number of items in a locked room only accessible to O'Neill in his barn.  Because the barn was located outside of their jurisdiction, Fostoria Police advised the Wood County Sheriff's Office of the report, and Detective Sergeant Ginnie Barta prepared a search warrant to search the barn.  This warrant recited the same facts contained in the first search warrant, as well as the discovery of the items in O'Neill's barn.  Because Sergeant Barta copied and pasted from the first affidavit to create her own affidavit, the warrant contained the same false statement that O'Neill possessed child pornography on a peer-to-peer network.

After a grand jury indicted O'Neill for sexually exploiting a minor in violation of 18 U.S.C. § 2251(a) and for receiving or distributing child pornography in violation of 18 U.S.C. § 2252(a)(2), O'Neill filed multiple motions to suppress evidence.  Two of these motions—those contesting whether the warrant to search the house and the warrant to search the barn contained probable cause—are relevant on appeal.[1]  The district court denied both motions.  In a written order addressing the motion to suppress the evidence recovered from O'Neill's home, the court acknowledged the government's concession that the statement in the affidavit relating to possession of child pornography on a peer-to-peer network was false.  It nevertheless concluded that, because the affiant represented that this inclusion resulted from his use of a template to draft his affidavit in this case, it was not a knowing or reckless misstatement.  Notwithstanding the

---

[1]Although, on appeal, O'Neill attempts to challenge the denial of his motion to suppress evidence recovered from his home, as the majority opinion correctly concludes, the reservations of appeal rights in his plea agreements only extend to the motion to suppress evidence discovered in the barn.  Even still, the district court incorporated its reasons for denying the motion to suppress evidence discovered in the home into its denial of the motion to suppress evidence discovered in the barn.  Accordingly, the same analysis applies to both orders, even if only one has been properly preserved for appellate review.

government's own acknowledgement of the statement's falsity, the court went on to conclude that there was "in all likelihood nothing false" about the peer-to-peer network statement because it took judicial notice of other court records in child pornography cases that purportedly show that child pornography collectors "universally . . . use P2P file sharing sites." Order, R. 78, Page ID #556.

The district court also concluded that the false statement "could not have affected the decision to issue the warrant" because of the other information before the magistrate, and because what mattered to the probable cause inquiry was that "a cache of . . . contraband" was found on Defendant's electronic devices, not whether it came to be there via a peer-to-peer network. *Id.* Nevertheless, the court found that the rest of the information in the affidavit did not establish probable cause because it only referenced nude photos of children, which, unlike child pornography, receive First Amendment protection under long-standing Supreme Court precedent. *See New York v. Ferber*, 458 U.S. 747, 764–65, 765 n.18 (1982); *see also Osborne v. Ohio*, 495 U.S. 103, 112 (1990) ("[D]epictions of nudity, without more, constitute protected expression."). Despite the lack of probable cause in either warrant, the district court held that the good-faith exception to the warrant requirement applied and denied O'Neill's motions to suppress the evidence recovered from his home and his barn.

## II. DISCUSSION

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. On appeal, the government does not challenge the district court's determination that the warrant lacked probable cause. Instead, it argues that the good-faith exception to the warrant requirement as announced in *United States v. Leon* applies and prevents suppression of the evidence. 468 U.S. 897 (1984). *Leon* provides that the Fourth Amendment's exclusionary rule does not apply to police officers' reliance in good faith on a warrant issued by a magistrate later determined to lack probable cause. *Id.* at 913. However, *Leon* also specifies four situations in which the good-faith exception should not save an otherwise deficient warrant: "(1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing

magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and, (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid." *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005) (citing *Leon*, 468 U.S. at 914–923).

"In the years since *Leon*, this Court and others have repeatedly held that the good-faith exception does not apply when 'the supporting affidavit contained [a] knowing or reckless falsity.'" *United States v. Abernathy*, 843 F.3d 243, 257 (6th Cir. 2016) (citations omitted) (quoting *United States v. Hammond*, 351 F.3d 765, 773 (6th Cir. 2003)). This is because "it would be an unthinkable imposition upon [the magistrate's] authority if a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment." *Leon*, 468 U.S. at 914 n.12 (alteration in original) (quoting *Franks v. Delaware*, 438 U.S. 154, 165 (1978)). Whether a statement is made in reckless disregard for the truth is a factual inquiry, reviewable by this Court for clear error. *United States v. Poulsen*, 655 F.3d 492, 504–05 (6th Cir. 2011). "A factual finding is clearly erroneous when a court, on reviewing the evidence, 'is left with the definite and firm conviction that a mistake has been committed.'" *United States v. Gunter*, 551 F.3d 472, 479 (6th Cir. 2009) (quoting *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)). Because the district court's finding that the officer did not act recklessly in including the peer-to-peer statement leaves one with the definite and firm conviction that a mistake has been committed, I would hold that the good-faith exception does not apply to the warrant to search the barn.

I begin by noting two legal errors in the district court's analysis of the peer-to-peer statements that contribute to the ultimate conclusion that the warrant's deficiencies cannot be excused by the good-faith exception. First, the district court erred in concluding that the information was not material to the issuance of the warrant, and, therefore, could not be the basis for probable cause. It held that this false statement could not have affected the magistrate's decision to issue the warrant "given what else was before the judge." Order, R. 78, Page ID #556. However, as the district court later concludes, and the government does not dispute, the warrant otherwise failed to establish probable cause to search O'Neill's barn. Moreover, the

district court noted that where a defendant acquires child pornography—for example, through a peer-to-peer network—is not as relevant to the probable cause inquiry as the fact that a defendant has child pornography on his devices. But, as stated, the district court itself concluded that the affidavit's references to nude photographs of children did not establish probable cause that O'Neill had child pornography on his devices. And the affidavit did not refer to the peer-to-peer network in a vacuum, but explicitly stated that probable cause existed because O'Neill possessed child pornography on the network. As the remainder of the affidavit only represents that nude images were on O'Neill's devices and lists a number of items found in O'Neill's barn that are legal to possess,[2] this statement is highly material as it is the only non-conclusory statement linking O'Neill to "child pornography" in the entire affidavit.

Second, although the district court explicitly acknowledged the government's concession that the peer-to-peer statement in the affidavit was false, it nevertheless concluded that the statement was likely true by taking judicial notice that individuals who collect child pornography often use peer-to-peer networks. But the fact that some child pornographers use peer-to-peer networks has no bearing on whether O'Neill used a peer-to-peer network in this case. What could be true in the mine-run of cases is irrelevant to whether the statement was true when Officer Brian and Sergeant Barta included it in their affidavits, and taking judicial notice of an irrelevant fact to excuse a false statement in a warrant is clearly improper. The majority does not address this error, instead only writing that "the court found that the Brian and Barta affidavits contained false statements."[3] Maj. Op. at 5. But the district court's finding that the statements were nevertheless likely true represents yet another inherent contradiction in its reasoning in service of a belt-and-suspenders approach to avoid finding the warrant deficient.

---

[2]These included "a computer tower with monitor, computer discs, blank and used discs, vibrators and other sex toys, condoms, and children's clothing and 'costumes.'" Second Search Warrant, R. 68-1, Page ID #502. The majority claims that these items, along with the photos of nude young boys on O'Neill's phone, could permit a "strong inference that O'Neill had a sexual interest in children and that he either had acted or planned to act on that interest." Maj. Op. at 13–14. But, again, the majority makes this inference about O'Neill's proclivities based only on a collection of legal items O'Neill possessed in the same room. By contrast, the case that it relies upon to make this leap noted that the challenged affidavit explicitly described the defendant's sexual assault of a child, and that the defendant used a computer as a part of this assault. *United States v. Clark*, 668 F.3d 934, 940 (7th Cir. 2012). This type of evidence is a far cry from the mere collection of legal items contained in the affidavit in this case.

[3]As stated, the district court did acknowledge this admission from the government. This makes the district court's final conclusion that the statements were nevertheless likely true even more troubling.

Thus, despite the district court's conclusions, the statement was certainly material, and certainly false. The question that remains is whether the district court's additional conclusion that the false statement was not made intentionally or recklessly amounts to clear error. The district court credited Officer Brian's statement that the false statement was included "inadvertently" in the first affidavit. Brian Decl., R. 47-1, Page ID #375. Implicitly, as it adopted its reasoning from its first order to deny the motion to suppress the evidence recovered from the barn, it also credited Sergeant Barta's declaration that the inaccurate information was copied and pasted "inadvertently" from Officer Brian's affidavit and accordingly found that her false statement was not intentional or reckless. Barta Decl., R. 68-2, Page ID #515. To be sure, Sergeant Barta's statement contended that the inclusion was unintentional. However, the inquiry cannot simply end with a contention that Sergeant Barta's mistakes were unintentional. The good-faith exception demands more.

When a warrant is issued based on statements made with reckless disregard for their truth or falsity, the good-faith exception does not apply. *Abernathy*, 843 F.3d at 257. An officer acts recklessly when she subjectively entertains serious doubts as to the truth of the allegations in the affidavit. *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) (citing *United States v. Cican*, 63 F. App'x 832, 836 (6th Cir. 2003)). This recklessness can be inferred when there are "circumstances evincing obvious reasons to doubt the veracity of the allegations." *Cican*, 63 F. App'x at 836–37 (quoting *United States v. Whitley*, 249 F.3d 614, 621 (7th Cir. 2001)); *see also United States v. Colquitt*, 604 F. App'x 424, 429 (6th Cir. 2015).

When an officer copies and pastes from another document and does not ensure that the copied information applies to the present case, this presents an obvious reason to doubt the veracity of an allegation. This is particularly true when an officer copies and pastes from a template affidavit governing an entirely different set of facts, as Officer Brian did. Although Sergeant Barta copied and pasted from Officer Brian's affidavit, which was about O'Neill, this does not absolve her of the duty to ensure the accuracy of statements in her affidavit or make her actions any less reckless for failing to do so. To be clear, Sergeant Barta did not believe the statement to be true just because Officer Brian included it in his previous affidavit. Rather, she explained that she had no knowledge of O'Neill's use of a peer-to-peer network, but only

included the false statement because she "simply fail[ed] to catch it while proofreading." Barta Decl., R. 68-2, Page ID #515.

The majority finds that these actions amount to "'isolated' negligence," rather than the "'reckless disregard for the truth' that the exclusionary rule is designed to deter." Maj. Op. at 9 (citations omitted). Bolstering this conclusion, the majority emphasizes that the false statements were found in sections using boilerplate language copied from the template affidavits. Although not explained by the majority, this presumably suggests that the false statement's proximity to boilerplate language makes the officer less culpable for failing to read these sections carefully. But this suggestion is curious given that both Officer Brian and Sergeant Barta did change language in the paragraph at issue and the preceding paragraph. Specifically, the officers intentionally inserted the addresses of the home and barn in the very section containing the false statements. The failure to ensure the accuracy of the five lines of text between the two changes cannot be dismissed as mere negligence.

Moreover, using boilerplate language does not excuse officers from reading the language that they submit to the magistrate and ensuring that it is truthful. Sergeant Barta herself acknowledged that copying and pasting from template affidavits is "standard practice in law enforcement," particularly when time is of the essence in securing a search warrant. Barta Decl., R. 68-2, Page ID #515. Under the majority's approach, whenever an officer fails to ensure that everything copied and pasted from a separate document into an affidavit is truthful, this may be excused as mere negligence. And the majority holds today that this remains true even when the remainder of the warrant establishes no probable cause to search—because the courts should believe that these same officers acted in good faith in relying on a deficient warrant signed by a magistrate.

The majority faults this approach as creating a "strict liability" test because "the law does not deem an officer reckless whenever she includes inaccurate information in her affidavit, even despite having made efforts to ensure her affidavit's accuracy." Maj. Op. at 9–10. But Sergeant Barta's actions were not reckless merely because she did not ensure the accuracy of her statements. Instead, as explained, her copying and pasting from a separate affidavit presented an "obvious reason[] to doubt the veracity of the allegations" made in her own affidavit. *Cican*,

63 F. App'x at 836–37. This obvious reason, coupled with her failure to remove a false statement that she later admitted she had no basis for believing was true, makes the inclusion of the statement reckless.

The majority also misunderstands the relevance of Sergeant Barta's incomplete proofreading. It contends that Sergeant Barta's proofreading and editing of the second affidavit does not create "a sound reason to conclude that Sergeant Barta consciously harbored doubts about the accuracy of her affidavit." Maj. Op. at 9. By contrast, that Sergeant Barta proofread her affidavit and changed material that she had copied and pasted means that she knew her copied text would not fully support her affidavit for the barn. Thus, she subjectively had doubts about the veracity of the information copied and pasted into the affidavit as it applied to the subject of the search.

To be sure, as the majority notes, we have previously upheld factual determinations by district courts that an officer did not act recklessly when she merely made a typographical error in an affidavit, even those resulting from a copy and paste error. *See, e.g.*, *Colquitt*, 604 F. App'x at 429–30; *see also United States v. Frazier*, 423 F.3d 526, 539 (6th Cir. 2005) (upholding the denial of a *Franks* hearing when the affidavit contained a typographical error as to a date in the affidavit). But these previous cases did not involve officers copying and pasting from an entirely separate document. For example, in *Colquitt*, the case most similar to the instant matter, this Court credited the district court's determination, made after hearing live testimony from the affiant, that the affiant did not recklessly include false information when she copied and pasted one portion of the same affidavit to serve as the basis for another, and erroneously stated that a drug transaction occurred in the house to be searched when it actually occurred elsewhere.**[4]** 604 F. App'x at 429–30. In that case, the district court found the officer's testimony plausible in part because there would be "little reason" for the affiant to have intentionally or recklessly misled the magistrate when the remainder of the affidavit described other drug transactions that

---

**[4]**The other cases cited by the majority opinion do not involve the same copy and paste procedure used by Sergeant Barta, but merely involve typographical errors made in affidavits. *See* Maj. Op. at 10–11. Although this Court previously found these mistakes to be merely negligent, they did not present the same "obvious reason[] to doubt the veracity of the allegations"—copying and pasting from a separate document—as are present in this case. *Cican*, 63 F. App'x at 836–37.

occurred in the house. *Id.* at 429. Additionally, the Court agreed with the district court's determination that, even without the false statements, the rest of the warrant contained probable cause. *Id.* at 430.

By contrast, in this case, Officer Brian copied and pasted the false statement from an entirely separate affidavit, and failed to ensure that everything copied and pasted was accurate as to O'Neill. Sergeant Barta, despite admittedly having no information that O'Neill used a peer-to-peer network, failed to proofread, and included materially false information that served as the only basis for probable cause. And, in explaining why this did not constitute a reckless disregard for the truth, the district court in the instant case merely stated: "[W]hy would [Officer Brian] deliberately lie? What's the motive? Most importantly, what's to be gained from lying? The answer to those questions is: none and nothing. This makes clear [Officer Brian's] lack of intent to mislead the issuing judge."[5] Order, R. 78, Page ID #556. The combined effect of this cursory explanation and the district court's multiple, inherent contradictions in its reasoning—and the fact that these false statements were copied from an entirely separate document, giving rise to obvious reasons to question their veracity—leads to the firm conviction that a mistake has been committed.

Finally, the majority claims that the warrant to search the barn would "likely" be supported by probable cause even without the false statement about the peer-to-peer network. Maj. Op. at 13. However, even though the government argued in the district court that the warrant contained probable cause absent the false statement, it has abandoned this argument on appeal, making it unreviewable. *See United States v. Thornton*, 609 F.3d 373, 380 (6th Cir. 2010) (declining to consider abandoned arguments in ruling on a motion to suppress because they were "not reviewable on appeal"). Not only is the majority's last-ditch effort to save this deficient warrant by considering this abandoned argument improper, but it is also legally inconsistent. The good-faith exception to the warrant requirement can be resorted to only when a warrant lacks probable cause. *Leon*, 468 U.S. at 900. By resting its holding on the good-faith

---

[5]Without making further findings as to Sergeant Barta's affidavit, as stated, the district court incorporated its holding as to the house affidavit in its order denying O'Neill's motion to suppress the evidence gathered from the barn. Thus, the same cursory analysis applies to the warrant for the barn.

exception, while at the same time finding probable cause "likely" existed in the deficient warrant, the majority contorts this long-standing principle in service of upholding the district court's clearly erroneous findings.

## III. CONCLUSION

The government on appeal no longer argues that probable cause existed absent the false statement. The majority ignores this abandonment of the government's argument and finds that probable cause "likely" existed. However, the majority is not permitted to also save the defective warrant by invoking the good-faith exception—which is permitted to be invoked only in the absence of probable cause.

Further, the majority opinion attributes the inclusion of the false statement that provided the only link between O'Neill and child pornography in the affidavit as being the result of a poor copy and paste job. The danger of this holding cannot be overstated. As Sergeant Barta herself indicated, law enforcement officers frequently copy and paste information from other affidavits to create search warrants. If they choose to use this practice, the Fourth Amendment requires, at a minimum, that they do so without a reckless disregard for the truth. By not ensuring the accuracy of the copied information in this case, Sergeant Barta acted recklessly. And when a warrant contains recklessly false statements, it cannot be saved by the good-faith exception. Because the district court's conclusion to the contrary leaves one with a definite and firm conviction that a mistake has been committed, I would reverse and remand with instructions to grant O'Neill's motion to suppress the evidence gathered in the barn.